PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.　　　　　　　　　　No. 01-4047

DONNTRAIE LEMANES BUTLER,
　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-00-151)

Argued: September 28, 2001

Decided: December 3, 2001

Before WILKINSON, Chief Judge, and WIDENER and
WILLIAMS, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Widener and Judge Williams joined.

---

## COUNSEL

**ARGUED:** Tamura D. Coffey, WILSON & ISEMAN, L.L.P.,
Winston-Salem, North Carolina, for Appellant. Sandra Jane Hairston,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee. **ON BRIEF:** Kevin B. Cartledge, WILSON & ISEMAN,
L.L.P., Winston-Salem, North Carolina, for Appellant. Benjamin H.
White, Jr., United States Attorney, Greensboro, North Carolina, for
Appellee.

**OPINION**

WILKINSON, Chief Judge:

Defendant Donntraie Lemanes Butler appeals the district court's judgment sentencing him to 161 months imprisonment. Butler argues that the court should have compelled the government to file a downward departure motion pursuant to 18 U.S.C. § 3553(e) and § 5K1.1 of the United States Sentencing Guidelines in view of the substantial assistance he rendered. Because Butler has not demonstrated that the government's refusal to make the motion was based on an unconstitutional motive, and because that refusal was rationally related to the legitimate government end of not rewarding defendants who threaten the lives of other defendants while in custody, we affirm the judgment of the district court.

I.

On May 17, 2000, Donntraie Lemanes Butler and co-defendants Darryl Bailey, Terrell Truesdale, Renaldo Davenport, and Corey Rutledge were arrested shortly after the robbery of First Charter Bank in Kannapolis, North Carolina. At the time of his arrest, Butler waived his Miranda rights, provided a written statement, and accompanied officers to the location where money from the bank robbery was hidden.

On May 30, 2000, a federal grand jury for the Middle District of North Carolina indicted Butler for bank robbery, armed bank robbery, and brandishing and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2113(a) and 2, 2113(d) and 2, and 924(c)(1)(A)(iii) and 2. Through counsel, Butler provided a detailed proffer to Assistant United States Attorney Lisa Boggs ("AUSA Boggs") concerning the bank robbery. On July 6, 2000, he entered into a plea agreement with the government, pleading guilty to the armed bank robbery and firearms counts.

After the plea hearing, Butler's counsel spoke to Butler at the request of AUSA Boggs concerning co-defendant Bailey's knowledge of the firearms used in the bank robbery. Butler recalled specific con-

versations with Bailey during and after a basketball game on the day before the robbery. Butler's counsel conveyed this information to AUSA Boggs. Then, on July 12, 2000, AUSA Boggs debriefed Butler on the robbery. The next day AUSA Boggs again debriefed Butler and prepared him to testify at Bailey's trial on the firearms charge.

The government does not contest that Butler was cooperative at all times. Indeed, though AUSA Boggs did not end up calling Butler to testify at Bailey's trial, she admitted that her decision not to call Butler as a witness after bringing him to the courthouse bore no relationship to her assessment of the truthfulness of his potential testimony. Rather, she stated that she made a tactical decision to conclude the government's evidence after the testimony of co-defendants Davenport and Rutledge.

Butler's sentencing hearing was scheduled for November 2000. Shortly before the hearing, AUSA Boggs informed Butler's counsel that counsel for Rutledge and the United States Marshals Service told her that while incarcerated, Butler had threatened Rutledge's life, as well as the lives of Rutledge's family and dogs.[1] AUSA Boggs further informed Butler's counsel that in view of Butler's recent behavior in custody, the government would not file a substantial assistance motion for him.

AUSA Boggs also informed Butler's counsel that the government would be recommending a 50 percent reduction for Davenport and Rutledge, the two co-defendants who testified at trial, and a 25 percent reduction for co-defendant Truesdale who, like Butler, was not called to testify at trial. In making these downward departure motions, the government did not dispute that Truesdale had initially not told the government that he carried both weapons used during the robbery, or that Rutledge had lied by telling the government that Butler had carried one of the weapons during the robbery.

Butler's sentencing hearing was continued until December 15, 2000. On December 7, 2000, Butler filed a motion to compel the gov-

---

[1]AUSA Boggs was later informed by Davenport that Butler had also threatened his life, and that he had overheard Butler threaten to kill Rutledge's family and dogs.

ernment to file a motion for downward departure pursuant to § 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e). In the alternative, Butler moved the court to downwardly depart in recognition of his substantial assistance. Butler alleged that the government had no rational basis for refusing to file a substantial assistance motion on his behalf. The other defendants were sentenced on December 15, 2000, but Butler's sentencing hearing was continued until December 29 so that his motion to compel could be heard.

At the December 29 hearing, AUSA Boggs admitted that Butler had rendered substantial assistance sufficient to warrant a § 5K1.1 motion as of the date of Bailey's trial. She also conceded that the sole reason the government refused to file the motion for Butler was his conduct while incarcerated, when he threatened the lives of Rutledge and Davenport, causing the United States Marshals Service to relocate Butler. At the conclusion of this hearing, the district court stated that it was unable to rule and the hearing was continued until January 5, 2001.

At the January 5 hearing, the court found as facts that the government admitted both that Butler had provided the government with substantial assistance in the investigation and prosecution of this bank robbery, and that Butler had cooperated with the government as much as another co-defendant who received a downward departure motion. The court further found that while four of the co-defendants were housed in the same jail, a Deputy United States Marshal notified AUSA Boggs that Butler had threatened Rutledge, causing the United States Marshals Service to move Butler to another facility. Finally, the court determined that Butler's threatening conduct while incarcerated was the sole reason for the government's refusal to file a downward departure motion for him.

The court found that the government had not declined to file a substantial assistance motion for Butler out of an unconstitutional motive or without a legitimate government concern. Accordingly, the court denied Butler's motion and sentenced him to 161 months imprisonment. However, in so concluding, the court expressed its reservations about the government's handling of this case, and voiced its hope that this court would reverse its decision. Butler appeals.

## II.

We review de novo the legal questions raised by the district court's application of the Sentencing Guidelines. *United States v. Blake*, 81 F.3d 498, 503 (4th Cir. 1996). However, we examine the district court's factual findings informing a sentencing decision for clear error. *Id*. Thus, we will show deference to the district court's factual determinations underlying its conclusion that the government had a rational basis for denying Butler a downward departure motion. But we will look afresh at the court's legal conclusion that those facts constitute a rational basis for the government's decision.

District courts are empowered, "[u]pon motion of the Government," to impose a sentence below the statutory minimum "to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). Similarly, § 5K1.1 of the United States Sentencing Guidelines permits district courts to go below the minimum required under the Guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." Thus, under both § 3553(e) and § 5K1.1, the district court's authority to depart is conditioned upon the government's filing a "substantial assistance" motion.

There is a reason why the plain language of these provisions "gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade v. United States*, 504 U.S. 181, 185 (1992). It is so that the prosecutor will have the greatest possible leverage in securing the cooperation of witnesses. If the government is in control of the motion, then it will have the maximum ability to elicit the sort of cooperation that is crucial to obtaining valid convictions. Thus, unless the government's failure to file a substantial assistance motion is "based on an unconstitutional motive," such as racial or religious animus, or is "not rationally related to any legitimate Government end," district courts have no authority to review a prosecutor's refusal to file a substantial assistance motion and grant a remedy. *Wade*, 504 U.S. at 185-86.

This court has followed the Supreme Court's lead and strictly interpreted the *Wade* exceptions, holding that the decision not to make a downward departure motion is properly within the government's dis-

cretion. *See, e.g.*, *United States v. Maddox*, 48 F.3d 791, 795-97 (4th Cir. 1995); *United States v. Wallace*, 22 F.3d 84, 87-88 (4th Cir. 1994). Indeed, we have held that a defendant's allegation that a similarly situated co-defendant received a substantial assistance motion does not justify the district court's departing downward in the face of government opposition. *United States v. LeRose*, 219 F.3d 335, 342-43 (4th Cir. 2000).

### III.

Butler does not suggest that the government's refusal to file a substantial assistance motion on his behalf was based on an unconstitutional motive. Rather, he contends that the government's reason for refusing to file the motion was not rationally related to a legitimate government end. In particular, Butler argues that the government admitted that its refusal was not related to the type or quality of assistance he provided. Indeed, Butler submits that the government conceded both that he rendered substantial assistance and that its reason for refusing to file a downward departure motion was based upon alleged acts of wrongdoing that occurred after he rendered substantial assistance — namely, threats he made on the lives of co-defendants while incarcerated.

In addition, Butler maintains that the government made substantial assistance motions for similarly situated co-defendants in this case. According to Butler, the disparate treatment he received further demonstrates that the government's refusal to file a downward departure motion for him was not rationally related to a legitimate government end.

There are three critical problems with Butler's position. First, the threats Butler issued to his co-defendants are in fact rationally related to the type or quality of assistance he rendered. A defendant is not rendering "substantial assistance" if he is threatening the life of another government witness before his sentencing hearing. Indeed, by obstructing the orderly administration of the criminal justice system, he is engaging in the very antithesis of substantial assistance. Under such circumstances, the government's refusal to file a downward departure motion is rationally related to the type or quality of assistance he provided. To hold otherwise is to require the government to reward a criminal defendant who has threatened criminal misconduct yet again.

Second, even if it were somehow the case that Butler's threats were not rationally related to the assistance he provided, that is not the relevant inquiry under *Wade*. We are bound by *Wade*, not by the Eighth Circuit's more restrictive view that Butler has urged upon us. *See United States v. Anzalone*, 148 F.3d 940, *reh'g en banc granted, opinion vacated*, 148 F.3d 940, *opinion reinstated, reh'g en banc denied*, 161 F.3d 1125 (8th Cir. 1998). The question under *Wade* is whether the government's refusal to make a downward departure motion is rationally related to any legitimate government end. *See* 504 U.S. at 186. And there can be no doubt that the government's behavior in this case passes this test. The government's interest in deterring a defendant from threatening the life of a co-defendant is not merely legitimate. It is compelling. A contrary conclusion would jeopardize the government's ability not only to secure cooperation from witnesses who could be intimidated into silence, but also to ensure a prison environment free from threats on inmates' lives.

Finally, Butler's allegation of disparate treatment is both factually incorrect and legally irrelevant. Factually, Butler and his co-defendants are not similarly situated because Butler is the only defendant who is believed to have threatened someone's life while incarcerated. And legally, *Wade* does not mandate a game of comparisons. Rather, the correct inquiry is whether the government acted on the basis of an unconstitutional motive or a basis not rationally related to any legitimate government end with respect to the individual defendant before the court. *See LeRose*, 219 F.3d at 342-43. The government's filing of downward departure motions for co-defendants is relevant only insofar as it bears on that question. Butler has not made the required showing of relevance that the government acted improperly with respect to him.

Thus, the district court properly denied Butler's motion to compel.[2] For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[2]The district court's refusal to grant Butler's alternative motion for downward departure pursuant to § 5K2.0 of the Sentencing Guidelines is not reviewable on appeal. *United States v. Bayerle*, 898 F.2d 28, 30-31 (4th Cir. 1990). The court's refusal to depart downward was not based on the mistaken view that it lacked the authority to depart. *See id.*