# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2170

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

REGINALD D. WILSON,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-CR-30040-MJR—**Michael J. Reagan**, *Judge.*

———————

ARGUED NOVEMBER 13, 2003—DECIDED DECEMBER 2, 2004

———————

Before POSNER, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This appeal represents the tail end of Reginald Wilson's protracted effort to obtain a shorter prison sentence for his July 2001 conviction for possession with intent to distribute crack cocaine. *See* 21 U.S.C. § 841(a)(1). Wilson pleaded guilty pursuant to a plea agreement contemplating the possibility that, based on Wilson's cooperation, the government would move for a reduced sentence on his behalf under either U.S.S.G. § 5K1.1 or Rule 35(b) of the Federal Rules of Criminal Procedure. Wilson did cooperate, and indeed the government admitted at sentencing that it intended to file a Rule 35(b) motion, so after waiting nearly a year for the govern-

ment to take action to trigger a sentence reduction, Wilson moved to compel the government to file a Rule 35(b) motion on his behalf. The district court ultimately denied Wilson's motion, and he appeals. Because the government's decision not to file a Rule 35(b) motion lacked a rational relationship to a legitimate government interest and was made in bad faith, we vacate the order denying Wilson's motion and remand for further proceedings.

## I. BACKGROUND

In November 2000 police arrested Wilson after discovering 25 grams of crack cocaine in his car. At the time, Wilson was serving a term of supervised release for a 1993 drug conviction. Following this November arrest, Wilson cooperated with the government in various ways. He confessed that he had obtained 56 grams of cocaine from a supplier, whom he identified to government agents. He also identified several individuals from whom he had purchased marijuana. And from December 2000 to February 2001, Wilson worked as a confidential informant for the government. Ultimately the government charged him with possessing with intent to distribute in excess of five grams of crack, in violation of 21 U.S.C. § 841(a)(1).

Wilson and the government executed a written plea agreement, which provides in relevant part:

> Defendant and the Government agree that based upon substantial assistance rendered through the complete and total cooperation of Defendant, the Government may, in the sole discretion of the United States Attorney, file either a motion under § 5K1.1 of the Sentencing Guidelines or a motion under Rule 35 of the Federal Rules of Criminal Procedure advising the Court of a recommended reduction in sentence. The Motion, if any, will <u>only</u> be filed if the assistance rendered by the Defendant

> is found to be complete and <u>thoroughly truthful</u>, regardless of the outcome of any trial or hearing at which the Defendant may testify. <u>The Defendant understands that any reduction of sentence, and the extent of that reduction, lies in the discretion of the Court</u>.

(emphasis in original). Wilson also agreed to waive his right to appeal any sentence or fine within the statutory maximum and his right to challenge his sentence in a collateral attack.

Wilson pleaded guilty pursuant to this agreement, but before sentencing he and his attorney discovered that Wilson had spent two extra years in prison for his 1993 conviction. The presentence investigation report for Wilson's current conviction revealed that the government had requested, and the district court had granted, a downward departure under Rule 35(b) vis-á-vis the former conviction. On that conviction Wilson had originally been sentenced to a term of 70 months' imprisonment in July 1993. Nearly a year later, the government had moved to reduce his sentence to 46 months' imprisonment—a motion the district court granted in November 1995. But on account of a bureaucratic bungle, the reduction was never communicated to the individuals who could effectuate it (presumably officials at the Bureau of Prisons). Thus, Wilson neither learned about nor received the benefit of the two-year reduction the district court had granted him.

The discovery, in part, prompted Assistant Federal Public Defender Lawrence Fleming (who did not represent Wilson in the 1993 case) to move for a downward departure in the current case. The motion requested that the court depart downward to 120 months from the range otherwise yielded by the relevant guidelines calculations (188 to 235 months) to account for the lost two years and because, Fleming argued, Wilson's criminal history category overstated the

seriousness of his prior offenses. Before filing the motion, Fleming had tried to bring the situation to the attention of the prosecutor, Assistant United States Attorney James Porter (who also prosecuted Wilson's 1993 case), but Fleming never got through to Porter, who did not return Fleming's voice mails. Fleming thus went ahead and filed the motion and with the service copy included a transmittal letter to Porter "confirming" what his telephone messages had explained: that the unexpected discovery of Wilson's two extra years in prison had precipitated the unusual departure request. Fleming's letter also explained that the downward departure motion contemplated that the government would still file its own motion to reward Wilson for his assistance. In closing, Fleming expressed his hope that Porter "and the powers that be" would not object to the motion, which Fleming thought was "the right thing to do."

Porter objected. He wrote Fleming a letter of his own, announcing that he was "simply floored" by Fleming's attempt to secure a downward departure on Wilson's behalf, a move Porter labeled "unconscionable." And although no term in Wilson's plea agreement can even arguably be read to prohibit Wilson from moving for a downward departure, Porter took the position in his letter that Wilson had breached the plea agreement by filing his motion. Thus, warned Porter, unless Wilson withdrew his motion, Porter would "cease any and all cooperation" with Wilson and suggest to the district court that Wilson be allowed to withdraw his guilty plea so that all matters against him could be "reset *ab initio* for trials or hearings." In closing, Porter condemned Wilson's motion as "overreaching by a three-time convicted felon" that made Porter "shudder to think" whether he would be doing his job if he "did any less than ensure that Mr. Wilson never gets to see the light of day again given his current situation."

Fleming—"shocked and disheartened" by Porter's response—immediately replied with another letter (complying

with a demand in Porter's letter that they communicate only in writing). Fleming laid out his reasons for filing the downward departure motion and assured Porter that he would approach Wilson about Porter's demand that the motion be withdrawn. Fleming acknowledged that it would not be in Wilson's interest to withdraw his guilty plea, and reiterated his desire that Porter move, as contemplated by the plea agreement, for a downward departure under U.S.S.G. § 5K1.1 or after sentencing under Rule 35(b). To that end, Fleming proposed the following potential "solution": Porter would agree to file a § 5K1.1 motion at sentencing, and then Wilson could argue to the district court that the botched handling of the court's order compelling his early release on the 1993 conviction warranted reducing his current sentence by more than the a customarily recommended by the government.

In several telephone conversations, Porter and Fleming discussed the possibility Fleming proposed. Ultimately, though, Porter refused to file a § 5K1.1 motion at sentencing. Instead, the lawyers agreed that if Wilson would withdraw his motion for a downward departure, he would qualify for a later-filed Rule 35(b) motion if he remained willing to cooperate at the government's request. Then when the government filed a Rule 35(b) motion, Wilson could argue for an additional reduction premised on the two extra years he wrongly spent in prison. In a letter to Porter that met with no disagreement from the prosecutor, Fleming memorialized this arrangement, which, he explained, "of course, contemplates the good faith of the Government in affording [Wilson] the benefit of Rule 35 provided he continues to cooperate." Wilson then moved to withdraw his downward departure motion "pursuant to negotiations with Government counsel."

Thus on July 30, 2001, Wilson was sentenced pursuant to the original plea agreement. In keeping with the parties'

subsequent agreement, Wilson, as noted, had withdrawn his motion for a downward departure, and the government did not move to reduce his sentence under § 5K1.1. The district court sentenced Wilson to 188 months' imprisonment, the bottom of the applicable guidelines range, followed by four years of supervised release, and imposed a $2,500 fine and a $100 special assessment. Before the court settled on a sentence, Porter offered the following regarding a substantial-assistance reduction:

> In mitigation we would point out the defendant has been cooperating with the Government since before his arrest in this matter, and based upon that cooperation the Government has indicated in the plea agreement it would be intending to file at the appropriate time a Rule 35 motion, which we're not prepared to file, obviously, today, but because of that, we would recommend a sentence at the low end of the guideline range.

Wilson did not appeal his conviction or sentence.

As the one-year deadline for the government to file a Rule 35(b) motion approached, *see* Fed. R. Crim. P. 35(b) (providing that the district court may reduce a sentence "[u]pon the government's motion made within one year of sentencing"), a new dispute over Wilson's sentence broke out. It started with a May 1, 2002, letter from Fleming to Porter, reminding Porter that the one-year deadline was approaching and requesting that he file a "placeholder" Rule 35(b) motion so that the deadline did not lapse. After seeing Fleming's letter, Wilson sent a letter of his own. He addressed his May 8 letter to various individuals, including Porter, whom he thought shared responsibility for the extra two years he had spent in prison on the 1993 conviction. In his letter Wilson protested that the government was "far from remorseful over the miscarriage of justice," as evidenced by Porter's earlier threat to put him "in prison for

life" instead of trying to remedy the situation. Wilson also set out his belief that those involved were not "acting in good faith and with clean hands" in the matter. He characterized his letter as a "NOTICE OF INTENT TO INSTITUTE LEGAL ACTION" and demanded that all of its recipients (save Fleming) respond within 10 days "and set forth any facts by which you claim that I have not been injured by your acts and or omissions, by virtue of which you are personally liable to me for damages."

Having received both Fleming's and Wilson's letters, Porter wrote back to Fleming and told him that "the United States intends to do nothing" for Wilson. Porter claimed that such a stance was necessary in light of the "pending litigation," and because of Wilson's failure to pay his fine or special assessment and the "threats" in his letter. In his reply to Porter, Fleming portrayed Wilson's letter as an "ill advised and inappropriate" reaction to his frustration over having spent two extra years in prison, but also told Porter that no lawsuit had been filed and that Wilson's letter could not be fairly construed to suggest there was any "pending litigation" about the untimely release. Fleming also noted his own belief that Wilson's letter had been drafted by a jailhouse lawyer who was providing "help" to Wilson. Fleming invited Porter to reconsider his position on the Rule 35(b) motion and again urged him to file a "placeholder" motion that would allow the parties to negotiate "the extent of the sentence reduction, if any." In return, Fleming would advise Wilson to "withhold any further action on whatever it is he may be contemplating" and also to pay the $100 assessment. Porter, though, was unmoved and wrote back to summarize his "bottom line:" "[U]nless and until your client changes his stance and returns to being a cooperating person fully in compliance with his plea agreement, nothing will be done. Please file whatever motions you deem appropriate given this. The clock is, in fact, running."

The motion Fleming apparently deemed appropriate was a "Motion to Enforce Plea Agreement and Agreement Regarding Withdrawal of Motion for Downward Departure and to Compel Government to File Rule 35 Motion," which he filed on June 4, 2002. In it Fleming argued that the government was obligated to file a Rule 35(b) motion under both the terms of Wilson's plea agreement and the separate agreement reached when Wilson withdrew his downward departure motion. On July 29, 2002—the day before the one-year mark—the government filed a "placeholder" Rule 35(b) motion "as an accommodation to the Court and the defendant." The district court determined that under *Wade v. United States*, 504 U.S. 181 (1992), Wilson was entitled to a hearing on his motion to compel. In *Wade* the Supreme Court held that a district court may review a prosecutor's refusal to move for a substantial-assistance reduction if the defendant makes a "substantial threshold showing" that the refusal is based on an unconstitutional motive or lacks a rational relationship to any legitimate government objective. *Wade*, 504 U.S. at 185-86. Although the court did not have space on its calendar to conduct a hearing on Wilson's motion before the one-year deadline elapsed, the government's "placeholder" motion preserved the court's jurisdiction to reduce Wilson's sentence if it ruled in his favor on the motion to compel.

In September 2002 the district court held a hearing on Wilson's motion. By then the parties (and the district court) had brokered a tentative agreement. Wilson would abandon his "threat" to file a lawsuit, and the government would proceed with its downward departure under Rule 35(b). The court would then grant the motion and both reduce Wilson's sentence by a *and* take off an additional two years to compensate Wilson for his previous prison time. In short, if Wilson would forego filing suit, he would be guaranteed a prison term of 101 months, just over seven years less than the 188-month guideline minimum that he was currently

serving. But Wilson would not agree, even after the court explained that he risked getting "no time off" his sentence. Wilson insisted that he did not "really want to discuss that, because I mean my understanding on that is I ain't really set right as far as even dwelling on it at this time because I am focused more on getting my reductions in this case." He emphasized that he was not interested in having the district court reduce his current sentence to compensate him for the extra time he had spent in prison on the previous conviction; instead, he reiterated that his only concern was in getting the a reduction for having provided substantial assistance in this case.

Wilson's unwillingness to accept the government's "offer" prompted Fleming to request an evaluation to ensure that Wilson was competent. The district court agreed to Fleming's request and continued the hearing on Wilson's motion to compel. The resulting evaluation established that Wilson was indeed competent, and so in mid-December 2002 the district court reconvened the hearing on Wilson's motion to compel. This time the government moved to withdraw its "placeholder" Rule 35(b) motion. Porter represented that the government sought to withdraw the motion because he believed that Wilson, by contemplating what Porter deemed to be a "frivolous and vexatious" lawsuit, had not rendered substantial assistance after all. To support their respective positions, the parties stipulated to the admission of the attachments to Wilson's motion to compel, consisting primarily of the correspondence between Porter and Fleming. Over Fleming's objection, the district court then granted the government's motion to withdraw its Rule 35(b) motion, rendering Wilson's motion to compel "ripe for consideration."

Almost four months later, on April 22, 2003, the district court denied Wilson's motion. The court first considered whether Wilson had shown his entitlement to relief under

*Wade* because the government's refusal to move for a downward departure was not rationally related to a legitimate government interest, *see id.* at 186. In defense of its refusal to file the Rule 35(b) motion, the government had proffered the following three reasons: (1) by threatening the government with a lawsuit, Wilson created an adversarial relationship inconsistent with his obligation to provide assistance if asked; (2) the government has an interest in deterring "frivolous and vexatious lawsuits" against it; and (3) Wilson had breached the plea agreement by failing to pay the fine and special assessment.

The district court rejected each of these reasons and found them "pretextual for the real reason"—the government's desire to use its control over the Rule 35(b) motion as a tool to secure a release from liability for the two extra years Wilson spent in prison on his previous conviction. As for the first reason, the district court explained that it could see no reason why the "*possibility* of a civil suit" would interfere with Wilson's ability to render assistance; more importantly, though, the court reminded the government of its stated position that Wilson had *already provided* substantial assistance. The court then posed the following question in dismissing the government's second reason: "If Wilson's civil lawsuit was 'frivolous and vexatious,' why did the Government use Federal Rule of Criminal Procedure 35 as a civil bargaining tool in the instant case rather than Federal Rule of Civil Procedure 12 or Federal Rule of Civil Procedure 50 in the wrongful incarceration civil case?" And as for the third reason, the court pointed out that the government would have been unconcerned about Wilson's fine and special assessment had he been willing to waive his civil claim against it and, regardless, Wilson *was paying* his financial obligations under the terms of the BOP financial responsibility program. Nonetheless, even after "seriously question[ing] the legitimacy" of the government's stated reasons, the court concluded that Wilson had not met

"his heavy burden" of proving that the government's action was not rationally related to a legitimate government interest.

Because the court concluded that the real reason for the government's refusal to move for a sentence reduction was unrelated to the type or quality of Wilson's assistance, it also considered whether he could receive relief under an Eighth Circuit case, *United States v. Anzalone*, 148 F.3d 940 (8th Cir. 1998). *Anzalone* holds that the government may not withhold a motion for a downward departure for reasons unrelated to whether the defendant provided substantial assistance. Although the district court thought *Anzalone* was well-reasoned and offered a "check and balance on overreaching prosecution," the court did not think the opinion could be squared with the limits for relief set out in *Wade*. Thus, the court rejected *Anzalone*'s approach, under which Wilson would have prevailed.

The court also rejected Wilson's argument that the government's use of its power to trigger a reduced sentence as leverage to prevent him from filing a civil suit amounted to an unconstitutional motive. *See Wade*, 504 U.S. at 186. The court cursorily reasoned that the government's effort to block Wilson's suit was not on par with refusing to file based on a defendant's race or religion, the examples cited in *Wade. See id.*

Finally, the district court found that the government had not promised to file a Rule 35(b) motion in exchange for Wilson's withdrawal of his downward departure motion. Instead, the court found, the government had promised to "act in good faith" regarding the motion. And although the government's behavior was "questionable," the court continued, it did not amount to "bad faith."

## II. ANALYSIS

### A. Rational Relationship

On appeal, Wilson maintains that, apart from the terms of his plea agreement, he is entitled to relief under *Wade*, which sets forth two limitations on a prosecutor's refusal to file a substantial-assistance motion. First, the prosecutor's decision must have some rational relationship to a legitimate government interest. *See Wade*, 504 U.S. at 186; *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994); *see also United States v. Duncan*, 242 F.3d 940, 950 (10th Cir. 2001). Additionally, the decision may not be based on an unconstitutional motive, such as race or religion. *Wade*, 504 U.S. at 185-86; *Bischel*, 32 F.3d at 263. Although Wilson claims here that the government's decision ran afoul of both limitations, he does not develop his assertion that the government harbored an unconstitutional motive, i.e., impeding his right of access to the courts. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (even arguments raising constitutional claims are waived when undeveloped and unsupported by pertinent legal authority). We thus focus on Wilson's contention that the government's refusal to file a Rule 35(b) motion lacked a rational relationship to some legitimate government objective.

Wilson argues that, in light of the district court's conclusion that each of the government's asserted reasons was pretextual, the refusal to file a Rule 35(b) motion on his behalf could not have been rationally related to a legitimate government end. We agree. Instead of acknowledging the district court's factual findings about its motive, the government simply reasserts the reasons the district court rejected (it does abandon reliance on Wilson's alleged failure to pay his fine and special assessment). Nowhere does the government argue that the district court clearly erred by disbelieving its asserted reasons for refusing to file a Rule 35(b) motion. *See United States v. Butler*, 272 F.3d 683, 686

(4th Cir. 2001). Thus, if we are to review anything at all, we would consider the reason that the district court found was really motivating the government's conduct: the government was using its discretion over the filing of a Rule 35(b) motion in this case to force Wilson to abandon his effort to redress the extra two years he spent in prison on another case because of apparent negligence by government employees. The government avoids directly defending this reason, and instead urges us to reject *Anzalone* and conclude that a reason wholly unrelated to the defendant's cooperation is one that is rationally related to a legitimate government objective.

In *Anzalone* the Eighth Circuit held that "the government cannot base its [Rule 35(b)] decision on factors other than the substantial assistance provided by the defendant." *Anzalone*, 148 F.3d at 941 (internal quotations omitted). The court reasoned that since the defendant admittedly had provided substantial assistance the government could not refuse to file a departure motion on the ground that he was suspected of subsequently possessing and using a controlled substance—a reason "unrelated to the quality of [his] assistance in investigating and prosecuting other offenders." *Id.* The Fourth Circuit, however, has expressly rejected *Anzalone* as inconsistent with *Wade. See Butler*, 272 F.3d at 687. In *Butler* the government refused to file a downward departure motion under § 5K1.1 after receiving word that the defendant, before sentencing, had threatened to kill one of his co-defendants, along with the co-defendant's family and his dogs. *Id.* at 685. The panel in *Butler* rejected Butler's contention that his threats were unrelated to the "type or quality of assistance he rendered." *Id.* at 687. But the court went further and concluded that "even if it were somehow the case that Butler's threats were not rationally related to the assistance he provided, that is not the relevant inquiry under *Wade*." *Id.* Thus, the court concluded that the government's refusal to file could be defended with

reference to the general governmental interest in "deterring a defendant from threatening the life of a co-defendant." *Id.* The other case to flatly reject *Anzalone*, *United States v. Nealy*, 232 F.3d 825 (11th Cir. 2000), is unhelpful because it appears to have disregarded the *Wade* rational basis test altogether, limiting the defendant's recourse to those instances when the government harbors an "unconstitutional motive" for refusing to file a substantial-assistance motion. *Id.* at 831.

We need not resolve the conflict between the extreme positions articulated in *Anzalone* and *Butler* to decide that the government has simply failed to convincingly articulate a rational reason for withholding the Rule 35(b) motion. We do not go so far as to endorse *Anzalone* and say that the government's reason must *always* be related to the quality of a defendant's assistance. Here, however, the government's attempt to block Wilson from pursuing his unrelated (and, as far as we know, still unrealized) civil suit is so far afield from the purpose of § 5K1.1 and Rule 35(b) as to be irrational. It has nothing whatsoever to do with even general prosecutorial aims, which our circuit and others have assumed should animate a refusal to move for a substantial-assistance departure. *See*, *e.g.*, *United States v. Emerson*, 349 F.3d 986, 988 (7th Cir. 2004) (noting that defendant could not show that government's reason for refusing to depart lacked a rational basis because government gets to decide "*whether 'substantial assistance' has been rendered*" (emphasis added)); *Duncan*, 242 F.3d at 949 (noting that government's refusal to move for downward departure was rationally related to "legitimate *law enforcement* ends") (emphasis added). This, coupled with the district court's rejection of the government's stated justifications (and the government's failure to challenge the court's factual findings on appeal) convinces us that the government's refusal to file a Rule 35(b) motion was not rationally related to a legitimate government interest. *See United*

*States v. Hawkins*, 274 F.3d 420, 433-34 (6th Cir. 2001)
(noting that government's refusal to file § 5K1.1 motion was
not rationally related to any legitimate end when it was
undisputed that defendant performed obligations under
plea agreement).

## B.  Bad Faith

That leaves Wilson's alternate contention that the gov-
ernment acted in bad faith by refusing to file a Rule 35(b)
motion. Although Wilson acknowledges that we do not
generally review a prosecutor's refusal to file a downward
departure motion for "bad faith," *see United States v. Burrell*,
963 F.2d 976, 985 (7th Cir. 1992), he points out that here
the district court expressly found that the government had
promised Wilson that it would act in good faith if he
withdrew his own motion for a downward departure. That
motion, of course, had nothing to do with substantial as-
sistance and, as we have said, was not forbidden by any
term of Wilson's plea agreement. Wilson contends that, once
the district court rejected the government's proffered
reasons for refusing to move for a downward departure, the
court erred by nonetheless concluding that the government
had not acted in bad faith. As evidence of the government's
bad faith, Wilson points out that the government itself
acknowledged that he had upheld his end of the bargain by
providing substantial assistance. And, as the government
demanded, he also withdrew his motion for a downward
departure, which was premised in part on the additional
two years he mistakenly spent in prison. Wilson contends
that he justifiably expected that the government in turn
would fairly, and in good faith, decide whether to file a Rule
35(b) motion on his behalf; instead, he argues, the gov-
ernment injected a new condition into the agreement— his
willingness to release it from liability for the extra two
years he spent in prison—and then asserted pretextual

reasons for its refusal to reward his substantial assistance by filing an otherwise routine Rule 35(b) motion.

Although in the context of contract disputes we review deferentially a district court's finding of good faith, *see Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789, 797 (7th Cir. 2001), we agree with Wilson that the underlying facts found by the district court in this case lead inescapably to the conclusion that the government acted in bad faith. After rejecting each of the government's stated reasons for refusing to file, the district court noted that "the propriety of the [government's] decision not to file for downward departure is questionable." Without explaining further, the court then concluded that it "cannot say that the Government's actions amount to bad faith."

Yet, as Wilson points out, the court's factual findings compel the opposite conclusion for several reasons. First, by conditioning its willingness to file a Rule 35(b) motion on Wilson's assent to forego suit, the government unilaterally inserted a new, unbargained-for term into the agreement obligating Wilson to withdraw his downward departure motion. At that point Wilson had fully performed his obligations by providing substantial assistance and withdrawing his motion for a downward departure. It was thus unfair for Porter to then announce that the government would ignore its reciprocal obligation to perform unless Wilson jumped over new hurdles that were not part of the bargain. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 433 (7th Cir. 1993) (introducing new demands late in negotiating process may constitute bad faith).

Moreover, the government overreached by requiring Wilson to withdraw his motion for a downward departure in the first place. Nothing in the plea agreement prohibited him from filing such a motion, yet the government refused to move under Rule 35(b) unless he withdrew it, and in exchange promised Wilson only that it would "act in good

faith"—something it was already obligated to do by the general duty of good faith and fair dealing implied in every agreement. *See* Restatement (Second) of Contracts § 205; *cf. Contempo Design Inc. v. Chicago and N.E. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 550 (7th Cir. 2000) (en banc) (promise to perform pre-existing duty does not supply consideration). And since the government conceded in the district court that it was satisfied with the assistance Wilson had provided, it cannot now claim that it was honestly dissatisfied with his performance. *See United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir. 1990) (relying on Restatement (Second) of Contracts for proposition that government may characterize defendant's performance as inadequate "only if it is honestly dissatisfied"). Finally, the district court's finding that the government advanced pretextual reasons for its refusal to move for a downward departure evidences bad faith on the government's part. *See Entergy Ark., Inc. v. Nebraska*, 358 F.3d 528, 551 (8th Cir. 2004) (upholding district court's finding of bad faith when defendant offered pretextual reason to cover up real reason for refusing to carry out plan for radioactive waste disposal site); *see also United States v. Knights*, 968 F.2d 1483, 1487-88 (2d Cir. 1992) (vacating and remanding district court's finding that prosecutor acted in good faith when none of government's reasons for refusing to move for downward departure suggested that defendant had not fulfilled his obligations).

We are unpersuaded by the government's general contention that it acted "with abundant good-faith." To support its position, the government points out that it offered to move under Rule 35(b) to reduce Wilson's sentence by a *and* to recommend that the district court take two additional years off the sentence (which the district court assured Wilson that it would do) if Wilson would only forego any claim arising from the two extra years he spent in prison. The government contends that its offer was so good that

Wilson's own attorney questioned his competence when he rejected it. Thus, the argument goes, the government *must have* been acting in good faith. But its position makes no sense: that Wilson acted irrationally by refusing the "solution" has little or no bearing on whether the government acted in good faith by conditioning its willingness to file on Wilson's forbearance from suit in the first place. No amount of window dressing can hide the fact that Porter told Wilson in no uncertain terms that the government would not even consider carrying out its part of the bargain unless Wilson accepted the government's new one-sided demand. In sum, the district court concluded that the parties had an independent agreement that the government would act in "good faith" regarding Wilson's Rule 35(b) motion, and by subsequently conditioning its willingness to file on a reason unrelated to Wilson's admittedly satisfactory assistance, the government instead acted in bad faith.

### III.  CONCLUSION

The district court rejected each of the government's explanations for refusing to file a Rule 35(b) motion on Wilson's behalf. It then concluded nonetheless that the refusal was rationally related to a legitimate government interest and made in good faith. Given the district court's factual findings, and the sequence of events precipitating the government's ultimate withdrawal of its "placeholder" motion, the government neither furthered a legitimate government objective nor acted in good faith when it refused to file a Rule 35(b) motion in exchange for the substantial assistance it concedes that Wilson provided. We thus VACATE the district court's order allowing the government to withdraw its Rule 35(b) motion, REVERSE its order denying Wilson's motion to compel, and REMAND for further proceedings.

Pursuant to Circuit Rule 36, this case shall be reassigned to a new district court judge.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*