PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

v.

LASHAWN DWAYNE DIVENS, a/k/a
Lashawn Duwayne Divens,

　　　　　　*Defendant-Appellant.*

No. 09-4967

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph R. Goodwin, Chief District Judge.
(2:09-cr-00114-1)

Argued: March 25, 2011

Decided: July 5, 2011

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Monica Lynn Dillon, OFFICE OF THE UNITED

STATES ATTORNEY, Charleston, West Virginia, for Appel-
lee. **ON BRIEF:** Mary Lou Newberger, Federal Public
Defender, Lex A. Coleman, Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Charleston, West Virginia, for Appellant.
Charles T. Miller, United States Attorney, Charleston, West
Virginia, for Appellee.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Lashawn Dwayne Divens pled guilty to possession with
intent to distribute cocaine. Divens signed an acceptance of
responsibility statement but declined to sign a plea agreement
waiving certain rights to appellate review and collateral
attack. Solely because Divens would not waive these rights,
the Government refused to move for an additional one-level
reduction for acceptance of responsibility under U.S.S.G.
§ 3E1.1(b). Divens appeals, challenging the district court's
failure to compel the Government to move for the § 3E1.1(b)
reduction. For the reasons that follow, we vacate Divens's
sentence and remand for further proceedings consistent with
this opinion.

I.

On May 6, 2009, a federal grand jury charged Divens with
one count of possession with intent to distribute crack
cocaine. On July 9, 2009, the Government offered Divens a
plea agreement barring him from appealing any sentence that
did not exceed the Guidelines range and from mounting any
collateral attack not based on ineffective assistance of coun-
sel. Divens declined to sign that agreement, but he filed a
motion the very next day notifying the district court of his
intention to plead guilty. He also signed an "acceptance of

responsibility statement" admitting his guilt of the charged crime and expressing remorse.

On July 21, 2009, Divens pled guilty without benefit of a plea agreement. The probation officer prepared a presentence report explaining that Divens had timely notified the Government of his intent to plead guilty and recommending the award of a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The probation officer noted, however, that because Divens had rejected the Government's plea agreement, the Government would likely not move for an additional one-level reduction under § 3E1.1(b). Accordingly, the probation officer suggested a Guidelines calculation that did not include the additional one-level reduction. Divens objected to this calculation, arguing that he was entitled to the additional one-level reduction. In doing so, he acknowledged that the district court could award the reduction only on the Government's motion; he argued, however, that his unwillingness to execute the appellate waiver did not justify the Government's refusal to file such a motion.

At the sentencing hearing, the Government contended that its refusal to move for the additional reduction was "rationally related to the purposes of the guidelines" because it allowed the Government to avoid defense of "a complete appeal" and "allocate its resources to other matters." The district court overruled Divens's objection, concluding that the decision as to whether to move for an additional one-level reduction lay "completely in the discretion of the Government." The court then adopted the probation officer's suggested Guidelines range of 41 to 51 months' imprisonment, departed downward, and imposed a sentence of 36 months' imprisonment. Divens noted a timely appeal.

II.

Section 3E1.1(a) of the Guidelines provides for a two-level decrease in a defendant's offense level if he "clearly demon-

strates acceptance of responsibility for his offense." The very next subsection provides that:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(b). The district court awarded Divens the two-level reduction under § 3E1.1(a), but because the Government refused to file a motion under § 3E1.1(b), the court did not award Divens the additional one-level reduction provided by that subsection. The Government makes no claim that Divens does not qualify for a decrease under subsection (a) or that his offense level is less than 16. Nor does the Government contend that Divens failed to "timely" provide notice of his intention to plead guilty. Thus, the Government's sole contention is that Divens's failure to sign the appellate waiver justifies the Government's refusal to move for the additional one-level reduction under § 3E1.1(b).

### A.

Although § 3E1.1(b) provides for an additional one-level reduction "upon motion of the government," the Government itself recognizes that its discretion to act is limited. *See* Appellee's Br. at 8. Relying on *Wade v. United States*, 504 U.S. 181 (1992), the Government acknowledges that it may not exercise its discretion "arbitrarily or irrationally or base[d] . . . on an unconstitutional motive." Appellee's Br. at 8.

In *Wade*, the Supreme Court interpreted a different Guidelines provision, § 5K1.1, that allows for a downward departure "[u]pon motion of the government" stating that the defendant has provided substantial assistance. 504 U.S. at 185. Although the *Wade* Court held that § 5K1.1 granted the Government a "power, not a duty, to file a motion," it also recognized that district courts could order the Government to file a motion if the "refusal to move was not rationally related to any legitimate Government end." *Id.* at 185-86. We have interpreted *Wade* as permitting the Government to refuse to file a substantial assistance motion under § 5K1.1 so long as it provides *any* legitimate reason, even one unrelated to the defendant's "substantial assistance." *See United States v. Butler*, 272 F.3d 683, 687 (4th Cir. 2001).

If the standard developed in *Wade* and *Butler* governing § 5K1.1 reductions were to control cases like this one, involving § 3E1.1(b) reductions, Divens could not prevail. *See United States v. Wiggins*, 905 F.2d 51, 53-54 (4th Cir. 1990) (recognizing legitimacy of appellate waivers). But we have left this question open, *see United States v. Chase*, 466 F.3d 310, 314 n.2 (4th Cir. 2006), and the Government never explicitly argues that the standard developed in *Wade* and *Butler* governs § 3E1.1(b) reductions. Examination of the Guidelines commentary explains why—the commentary renders such an argument untenable.

Of course, § 3E1.1(b), like § 5K1.1, conditions any reduction on a "motion of the government." In its commentary, however, the Sentencing Commission clarified that although the Government's motion is necessary, the decision to file such a motion under § 3E1.1(b) involves far less expansive governmental discretion than under § 5K1.1. Specifically, the application commentary to § 3E1.1 (but not to § 5K1.1) explains that "[s]ubsection (b) *provides* an additional 1-level decrease in offense level for a defendant . . . who has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps set forth in subsection (b)." *Id.*

cmt. 6 (emphasis added). The background commentary to § 3E1.1 (again there is no analogue in § 5K1.1) adds that "[s]uch a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, *thereby* appropriately *meriting* an additional reduction." (emphasis added). Both of these comments indicate that the Government does not possess the wide discretion afforded by § 5K1.1 in deciding whether to move for the additional one-level reduction provided in § 3E1.1(b).[1]

This is not to say that the Government enjoys no discretion. To the contrary, Congress expressly clarified that "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing." *Id.* cmt. 6 (added by Congress in PROTECT Act, Pub. L. No. 108-21, § 401(g)). This sentence, the sixth in comment 6, makes plain that in deciding whether to file this "formal motion," the Government retains discretion to determine *whether* the defendant's assistance has relieved it of preparing for trial. But the second sentence in the same comment, as well as the background commentary that immediately follows, clarify that once the Government has exercised that discretion and determined that a defendant has in

---

[1]We recognize that these portions of the commentary originally accompanied a version of § 3E1.1(b) that lacked the current requirement of a governmental motion. *See* U.S.S.G. § 3E1.1(b) (2002). And unlike that requirement, which Congress in 2003 inserted into the Guidelines, *see* PROTECT Act, Pub. L. No. 108-21, § 401(g) (2003), the mandatory language was drafted by the Sentencing Commission. But neither fact weakens the commentary's persuasive force, because Congress has delegated to the Commission the authority to interpret the Guidelines, and Commission commentary binds us "even though it is not reviewed by Congress." *Stinson v. United States*, 508 U.S. 36, 46 (1993). Indeed, Congress's decision to amend the commentary in 2003 but leave intact the existing mandatory language provides additional evidence of congressional approval of that mandatory language. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967, 992-93 (2005).

fact alleviated the burden of trial preparation, the defendant merits an additional reduction. Thus, both of those comments speak in mandatory terms. The second sentence declares that § 3E1.1(b) "provides" the reduction "for a defendant" who meets the specified criteria. The background commentary emphasizes that "[s]uch a defendant" (one who meets the specified criteria) "merit[s]" the reduction. Accordingly, once the Government has determined that a defendant has "tak[en] the steps specified in subsection (b)," he becomes entitled to the reduction.

The lack of any similar commentary to § 5K1.1 disposes of any argument that the *Wade-Butler* standard governs § 3E1.1(b) cases. *See United States v. Hood*, 628 F.3d 669, 672 (4th Cir. 2010) (relying on Guidelines commentary to distinguish two virtually identical textual provisions). For Guidelines commentary controls judicial interpretation of a Guidelines provision unless the commentary is "inconsistent with, or a plainly erroneous reading of" a guideline. *Stinson v. United States*, 508 U.S. 36, 38 (1993). This is so even when the commentary provides a "broader interpretation" than that advanced by the guideline's text. *United States v. Mason*, 284 F.3d 555, 560 n.1 (4th Cir. 2002). Accordingly, under § 3E1.1(b) the Government retains discretion to refuse to move for an additional one-level reduction, but only on the basis of an interest recognized by the guideline itself—not, as with § 5K1.1, on the basis of any conceivable legitimate interest.

## B.

We recognize that this holding does not accord with that of other circuits. *See United States v. Deberry*, 576 F.3d 708 (7th Cir. 2009); *United States v. Johnson*, 581 F.3d 994 (9th Cir. 2009); *United States v. Beatty*, 538 F.3d 8 (1st Cir. 2008); *United States v. Newson*, 515 F.3d 374 (5th Cir. 2008).[2] Those

---

[2]Our holding would not, however, require a different disposition in two of these cases. In *Johnson*, the defendant entered a conditional plea,

courts have concluded that the Government may withhold a § 3E1.1(b) motion based on any rational interest. *See Beatty*, 538 F.3d at 15 (calling governmental discretion under § 3E1.1(b) "nearly unfettered"); *Newson*, 515 F.3d at 378. This conclusion relies heavily on cases interpreting § 5K1.1. *Cf. Beatty*, 538 F.3d at 15.

In our view, for the reasons explained above, the commentary to § 3E1.1(b) forecloses courts from relying on § 5k1.1 cases in interpreting § 3E1.1(b). This commentary, however, has received little attention from our sister circuits. Instead, those courts focus almost exclusively on the fact that Congress in 2003 amended § 3E1.1(b) to insert the governmental motion requirement. *See* PROTECT Act, Pub. L. No. 108-21, § 401(g). According to those courts, the mere fact of this 2003 amendment somehow demonstrates that Congress intended that the Government possess the wide discretion under § 3E1.1(b) that it enjoys under § 5K1.1. *See, e.g.*, *Johnson*, 581 F.3d at 1005-06; *Beatty*, 538 F.3d at 13-15. But nothing in the 2003 reforms evinces such an intent. After all, Congress could have amended the § 3E1.1(b) commentary so that it conformed to the commentary surrounding § 5K1.1. Congress declined to do so; it instead left unchanged § 3E1.1(b)'s mandatory commentary and inserted language suggesting that the Government's newfound discretion applies only to the question of "whether the defendant has assisted authorities in a manner that avoids preparing for trial." U.S.S.G. § 3E1.1 cmt. 6.

Given these facts, we cannot agree with our sister circuits that Congress's insertion into § 3E1.1(b) of the government

---

reserving his right to appeal the denial of his suppression motion, 581 F.3d at 998, and in *Beatty* the defendant pled guilty nearly sixteen months after being indicted and forced the prosecutor to "invest[ ] significant time and resources" proving disputed facts, 538 F.3d at 10, 12. In both cases, the Government well could have properly withheld a § 3E1.1(b) motion on the ground that the defendant failed to "timely" enter a true guilty plea sufficient to relieve it of the burden of trial preparation.

motion requirement reveals an intent to confer upon the Government the wide discretion provided it under § 5K1.1. *See Massachusetts v. EPA*, 549 U.S. 497, 533 (2007) (holding that a statutory grant of discretion is "not a roving license to ignore the statutory text" but is instead a "direction to exercise discretion within defined statutory limits"). Tellingly, the Government never explicitly defends this approach or contends that it enjoys the same expansive discretion under § 3E1.1(b) as it does under § 5K1.1. Instead, the Government offers other arguments for upholding the sentence here. We now turn to those arguments.

## III.

### A.

First, the Government maintains that an appellate waiver, like the one that Divens refused to sign, serves its interest in "avoid[ing] the expense and uncertainty of having to defend defendant's conviction and sentence on appeal and collateral attack." Appellee's Br. at 9.

This may be so, but § 3E1.1(b) simply does not require that a defendant provide the prosecution with the type of assistance that might reduce the "expense and uncertainty" attendant to an appeal. Instead, § 3E1.1(b) provides that a defendant earns an additional one-level reduction by providing the government one specific form of assistance, *i.e.* by "timely notifying authorities of his intention to enter a plea of guilty." *Id.*; *see* Webster's Third New Int'l Dictionary 307 (1993) (defining "by" as "through the means or instrumentality of"). Similarly, although § 3E1.1(b) subsequently identifies general interests—resource allocation and trial avoidance—the syntax of the guideline dictates that the furtherance of these interests must again derive from this same single source: the defendant's "timely notif[ication of] authorities of his intention to enter a plea of guilty." This is so because the word "thereby" is defined as "by *that* means," Webster's

Third New Int'l Dictionary 2372 (1993) (emphasis added), and in this case "that" refers back to the description in the previous clause of timely notification. *See Johnson*, 581 F.3d at 1008 (Smith, J., concurring).

Section 3E1.1(b) thus instructs the Government to determine simply whether the defendant has "timely" entered a "plea of guilty" and thus furthered the guideline's purposes in that manner. It does not permit the Government to withhold a motion for a one-level reduction because the defendant has declined to perform some other act to assist the Government. *See United States v. Richins*, 429 F. Supp. 2d 1259, 1263-64 (D. Utah 2006). Certainly, "timely" entry of a "plea of guilty" does not require the execution of an appellate waiver; rather it entails only an unqualified "confession of guilt in open court." Black's Law Dictionary 1152 (6th ed. 1990). Here, Divens timely entered an unqualified "confession of guilt in open court." That he also refused to assist the prosecution in other ways does not deprive him of the additional one-level reduction.

Furthermore, the text of § 3E1.1(b) reveals a concern for the efficient allocation of *trial* resources, not *appellate* resources. The guideline specifies that the guilty plea must enable the "government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). The context surrounding the term "the court" leaves little doubt that the term refers to the district court, not an appellate court. *See* U.S.S.G. § 3E1.1(b) (requiring the defendant to "permit[ ] the government to avoid preparing *for trial*"). Had Congress also intended to conserve appellate court resources, it would have referred to "courts," not "the court." *See* Webster's Third New Int'l Dictionary 2368 (1993) (explaining that "the" indicates "that a following noun . . . refers to someone or something that is unique . . . or exists as only one at a time"). The commentary confirms this conclusion.[3] *See id.* cmt. 2 (explaining

---

[3]Given that "the court" refers to the district court, and that the remainder of the guideline and its commentary focuses exclusively on trial prepara-

that the reduction is intended to relieve the Government of meeting "its burden of proof *at trial*"), cmt. 5 (noting that the "*sentencing judge* is in a unique position to evaluate a defendant's acceptance of responsibility"), cmt. 6 (recognizing defendant must "notif[y] authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the court may schedule its calendar efficiently"). In sum, neither the text of, nor commentary to, § 3E1.1(b) permits the Government to withhold a § 3E1.1(b) motion on the basis of its interest in conserving appellate resources.

B.

Second, the Government argues that the conservation of appellate resources is "closely related" to the interests recognized by § 3E1.1(b). Appellee's Br. 9; *cf. Deberry*, 576 F.3d at 711. But we can discern no basis in the guideline for allowing the Government merely to approximate compliance with its requirements. As explained above, § 3E1.1(b) requires the Government to consider the specific factors articulated in the guideline itself, not some other criterion that it believes to be "closely related" to the textual requirement. *Cf. Massachusetts*, 549 U.S. at 533-34 (strictly limiting discretion to the "statutory question" and not to related "policy judgments").

Moreover, the Government has offered no evidence suggesting that appellate waivers actually do further Congress's purpose in amending § 3E1.1(b).[4] The Conference Report

---

tion, § 3E1.1(b)'s reference to the Government's "resources" most naturally refers to the Government's trial resources. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (noting that "the meaning of statutory language, plain or not, depends on context").

[4]In passing, the Government attempts to justify Divens's sentence by noting that resources "devoted to appeals are resources lost to prosecuting other cases." Appellee's Br. at 9-10 (citing *Johnson*, 581 F.3d at 1002). This concern ignores the fact that § 3E1.1(b) addresses only the prosecution of a defendant's "own misconduct," not the defendant's assistance in prosecuting other cases. U.S.S.G. § 3E1.1(b). Even the commentary to § 5K1.1 emphasizes that courts are not to mistake these two distinct types of assistance. *See id.* § 5K1.1 cmt. 2.

accompanying those amendments states that the amendments' overarching goal was to address the "longstanding problem of downward departures" in cases involving "sexual abuse." H.R. Rep. 108-66 at 58 (2003) (Conf. Rep.). But nothing in the report suggests that curtailing appellate review would further this objective. To the contrary, the paragraph in the report describing § 3E1.1(b) explains that Congress intended to "allow appellate courts more effectively to review illegal and inappropriate downward departures" and to ensure that sentencing courts "give specific written reasons for any departure from the guidelines." *Id.* at 59. Appellate waivers—by necessarily curtailing the appeal rights of the Government as well as defendants, *see United States v. Blick*, 408 F.3d 162, 168 n.5 (4th Cir. 2005)—provide no assistance in combating this problem of "illegal downward departures." Thus, we cannot agree with the Government that courts should stretch the Guidelines' plain language to facilitate the Government's pursuit of such waivers.

## C.

Finally, the Government suggests that it can extract an appellate waiver in exchange for a § 3E1.1(b) motion in order to relieve it of expending resources "anticipating, and ultimately defending, a complete appeal."[5] Appellee's Br. at 10 (quoting *Newson*, 515 F.3d at 378 (internal quotations omitted)). This argument ignores the fact that a defendant's unconditional guilty plea in and of itself limits his grounds for appeal, restricting subsequent attacks on a conviction to the question of whether the plea "was both counseled and volun-

---

[5]The Government further suggested at oral argument that appellate review of criminal sentences wastes trial resources by requiring courts to resentence defendants upon remand. The argument is meritless. The Sentencing Commission did not draft § 3E1.1(b) to permit the conservation of resources by eliminating a defendant's statutory or constitutional rights. Rather, § 3E1.1(b) simply seeks to allocate resources "efficiently." To resentence a defendant who has received an illegal sentence is surely "efficient."

tary." *United States v. Broce*, 488 U.S. 563, 569 (1989). Of course, attacks on these grounds fall outside the scope of any appellate waiver. *See Blick*, 408 F.3d at 169 (recognizing the invalidity of appellate waivers entered into involuntarily or unintelligently). Therefore, when a defendant has unconditionally pled guilty, his refusal to sign such an appellate waiver has no impact on his ability to challenge his conviction or on the Government's need to "anticipate" such a challenge.

## IV.

For the foregoing reasons, we vacate Divens's sentence and remand for proceedings consistent with this opinion.[6] If the Government cannot provide a valid reason for refusing to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b) and continues to refuse to move for a such a reduction, the district court should order the Government to file the motion.

*VACATED AND REMANDED*

---

[6]On appeal, Divens also argues that the district court imposed a substantively unreasonable sentence in relying on a 20:1 crack/powder ratio in calculating the extent of its downward departure. Appellant's Br. at 28-38. Because the court procedurally erred in miscalculating the Guidelines range, we do not reach this argument. *See United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (permitting consideration of a sentence's substantive reasonableness "[i]f, and only if" an appellate court "find[s] the sentence procedurally reasonable").