**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronnie Dean HALL, Defendant– Appellant.**

**No. 91–50347.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1992.

Decided Sept. 10, 1992.

Guy C. Iversen, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

John J. Bryne Jr., Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before: SNEED and NELSON, Circuit Judges, and ROLL,* District Judge.

ROLL, District Judge:

## INTRODUCTION

Ronnie Dean Hall appeals his conviction following his conditional guilty plea to un-armed bank robbery, in violation of 18 U.S.C. § 2113(a). For the following reasons, we affirm.

---

* Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

1. Hall was arrested for bank robbery, attempted robbery, installing or using a shortwave radio

## FACTUAL AND PROCEDURAL BACKGROUND

Los Angeles County Sheriff's Deputies observed Hall and his brother, David Baker, inside their vehicle parked in the parking lot of a Lynwood, California liquor store at approximately 9:00 a.m. on July 21, 1990. The deputies watched Baker approach the liquor store, look over his shoulders, and conceal his right hand in his front pocket with a silver object protruding from it. Believing Baker was about to rob the liquor store, the officers performed a pat down search and found a pair of silver pliers tucked into Baker's pocket.

In the process of searching Baker, deputies overheard police transmissions coming from a scanning receiver located in Hall's car. Also in the car was an open canvas bag containing dollar bills, a syringe, a glass pipe and spoons. The district court found that both the radio and the bag with its overflowing contents were in plain view. The officers believed Hall and Baker to be under the influence of heroin.

Hall was charged with several violations of state law.[1] The state charges were dropped, but Hall's parole status was revoked and he was incarcerated for one year.

In September of 1990, an FBI agent contacted the correctional facility via telex. The agent requested that state officials hold Hall for federal custody if he posted bail on the state charges. The telex also stated that an Assistant United States Attorney had authorized the issuance of a complaint for bank robbery at some future unspecified time. Hall filed a demand for a speedy trial which was denied. No federal indictment had been issued at this time.

A federal grand jury later indicted Hall on federal bank robbery charges and a U.S. Marshal's Service detainer was filed shortly thereafter. Based on this indictment, Hall was notified that he could demand a speedy trial. In separate pre-trial proceed-

without permit, possession of drug paraphernalia, and being under the influence of a controlled substance.

**1204**

ings, Hall filed a motion to dismiss the indictment under the Interstate Agreement on Detainers Act (IADA) and a motion to suppress. The district court twice heard evidence on these matters, but the court denied both motions. Prior to the court's ruling, Hall entered a conditional plea of guilty and was sentenced to 168 months in the custody of the Attorney General, to be followed by three years of supervised release.

### ISSUES PRESENTED

On appeal, Hall argues that the district court erred in denying his motion to suppress evidence seized pursuant to a vehicle search and in denying his motion to dismiss the indictment under the Interstate Agreement on Detainers Act.

### MOTION TO SUPPRESS

■ The appellate court reviews the denial of a motion to suppress *de novo. United States v. McConney,* 728 F.2d 1195, 1202–1203 (9th Cir.) (*en banc*), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Whether there is founded suspicion to justify an investigatory stop is a mixed question of law and fact reviewed *de novo. United States v. Thomas,* 863 F.2d 622, 625 (9th Cir.1988).

■ A seizure is justifiable under the Fourth Amendment if there is an articulable suspicion that a person has committed or is about to commit a crime. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To determine whether reasonable suspicion existed, the court must consider the totality of the circumstances surrounding the stop. *Thomas,* 863 F.2d at 625. This includes the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers." *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1675, 84 L.Ed.2d 605, 612 (1985). There is sufficient evidence in the record to justify the initial

stop of Baker and the subsequent stop of Hall.

■ Because the officers possessed founded suspicion for the initial stop, the items discovered in the vehicle are admissible under the plain view exception to the warrant requirement.[2] The oft-cited requirements of the plain view rule are that the officer is lawfully located in a place where an object may be plainly seen, the incriminating character of the evidence is "immediately apparent," and the officer has a lawful right of access to the object itself. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Vehicles are also covered by the plain view exception. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

Accordingly, the federal findings are not clearly erroneous and these facts support a finding of founded suspicion. Either on the basis of founded suspicion or probable cause for arrest, the officers were rightfully on the scene. Therefore, the items Hall sought to suppress were admissible under the plain view exception to the warrant requirement.

### MOTION TO DISMISS INDICTMENT

■ The denial of a defendant's motion to dismiss an indictment under the IADA is a question of law reviewed *de novo. United States v. McConney,* 728 F.2d 1195 (9th Cir.1984). The factual findings underlying the decision are reviewed on a clearly erroneous standard. *United States v. Howard,* 828 F.2d 552 (9th Cir.1987).

■ Hall maintains that the district court erred in refusing to dismiss the indictment as violative of the IADA. The IADA is a congressionally sanctioned interstate compact codified at 18 U.S.C.App. § 1 *et seq. Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). The purpose of the IADA is to create a productive rehabilitative environment for prison-

**2.** The court ruled that the evidence by the deputies indicated that the deputies had probable cause to arrest. Because the arrest was valid, the evidence within the deputies' plain view was admissible.

ers serving sentences in one state by facilitating the disposition of charges pending in another state or by the United States. *United States v. Currier,* 836 F.2d 11 (1st Cir.1987). The IADA mandates that prison authorities notify prisoners of detainers placed against them and their right to demand a speedy trial. Once the prisoner makes such a request, the state issuing the detainer must begin the trial within 180 days. 18 U.S.C.App. § 2. The relevant provision provides that "[w]henever during the continuance of the term of imprisonment there is pending in any other party any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days...."

*United States v. Bottoms,* 755 F.2d 1349 (9th Cir.1985) is directly on point. In *Bottoms,* the defendant was arrested on state charges but ordered detained by federal authorities on the basis of an outstanding arrest warrant. A panel of this court ruled that although the defendant "was subject to detainers, they are not detainers as that word is defined in the Act." *Id.* at 1350. The court made clear that a detainer must be supported by an indictment, information, or complaint as those terms are technically defined. *See* Fed.R.Crim.P. 3 ("The complaint is a written statement of the essential facts constituting the offense charges. It shall be made upon oath before a magistrate.").

■ In Hall's case, as with *Bottoms,* no event occurred which would trigger the institution of the IADA provisions. Hall attempts to blunt the effect of *Bottoms* by urging this court to adopt a "rule of lenity" and interpret the IADA to cover this situation. But as Judge Chambers noted, if the statutory categories are to be redrawn, this task is best left to Congress. *Bottoms,* 755 F.2d at 1350. As of September 1990, the government has not filed an indictment, information, or complaint against Hall. Although the FBI telex promised that a complaint would be forthcoming, at this stage it was nothing more than a prediction.

Thus, the trial court was correct in refusing to dismiss the indictment.

■ Hall moves the court to apply the doctrine of equitable estoppel and preclude the government from arguing that "no complaint was pending." Estoppel prevents a party from showing the truth contrary to a representation of facts after another has relied upon the representation, *United States v. Georgia–Pacific Co.,* 421 F.2d 92 (9th Cir.1970), with the additional requirement of affirmative misconduct if estoppel is sought against the government. *United States v. Wharton,* 514 F.2d 406, 409–410 (9th Cir.1975). The concept of estoppel has been applied in the criminal context in limited instances. *See, e.g., United States v. Tallmadge,* 829 F.2d 767 (9th Cir.1987) (entrapment by estoppel applied against government when government agent affirmatively misled defendant into believing his conduct was lawful).

■ Even if we were to find the technical elements of estoppel present, this court can refuse to apply the doctrine when policy considerations so demand. *United States v. Ruby Co.,* 588 F.2d 697 (9th Cir. 1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). Policy considerations weigh against applying estoppel to Hall's case. First, the court would be creating new law by extending the estoppel doctrine to the IADA context. Second, it is questionable whether the elements are present at all. There were no misrepresentations because nothing in the FBI telex was false. The telex read that a complaint had been authorized, not that a complaint was pending. There is no evidence before the court of affirmative government misconduct. Thus, we need not apply the doctrine of equitable estoppel in this case.

AFFIRMED.