**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
        *Plaintiff-Appellee,*

v.

TODD DOUGLAS JOHNSON,
        *Defendant-Appellant.*

No. 08-30094

D.C. No.
3:07-cr-00047-TMB

OPINION

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted
January 23, 2009—Seattle, Washington

Filed September 10, 2009

Before: Robert R. Beezer, Richard C. Tallman, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Richard C. Tallman;
Partial Concurrence and Partial Dissent by
Judge Milan D. Smith, Jr.

**COUNSEL**

M.J. Haden, Office of the Federal Public Defender for the District of Alaska, Anchorage, Alaska, for the defendant-appellant.

Erin E. White (argued), Nelson P. Cohen, United States Attorney's Office for the District of Alaska, Anchorage, Alaska, for the plaintiff-appellee.

**OPINION**

TALLMAN, Circuit Judge:

Defendant-Appellant Todd Johnson pled guilty to one count of being a felon in possession of a firearm, in violation

of 18 U.S.C. §§ 922(g) and 924(a)(1). On appeal Johnson argues (1) that the district court improperly denied his motion to suppress and (2) that the district court erred in declining to award him a one-level downward adjustment pursuant to § 3E.1.1(b) of the Sentencing Guidelines. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

# I

On October 19, 2006, Alaska State Trooper Vic Aye and Deputy Troy Meeks of the United States Marshals Service were serving federal warrants on the east side of Anchorage. The officers were wearing plain clothes and driving an unmarked sports utility vehicle. While the officers were stopped at a traffic light across from the First National Bank, Deputy Meeks noticed three suspicious individuals standing in the bank's parking lot next to a tan Buick sedan. The car was parked about 20 feet from the bank's front entrance and its hood was raised. The three men—later identified as Johnson, David Brookins, and Alvin Nelson—were not looking under the hood but instead appeared to be surveying the bank and the surrounding area. As the officers drove away, Deputy Meeks observed Johnson and Nelson head toward the bank's front door. Johnson, who was wearing a hooded sweatshirt under a jacket, flipped up his hood partially obscuring his face.

His suspicions aroused, Deputy Meeks described to Trooper Aye what he had just witnessed. The officers decided to double back for another look. By the time they circled back to the bank, the sedan's hood had been closed, and Brookins was alone in the vehicle sitting in the driver's seat. The other two men were nowhere to be seen. Trooper Aye decided to enter the bank while Deputy Meeks stayed outside to surveil Brookins.

Once inside the bank, Trooper Aye immediately noticed a teller nervously watching Johnson and Nelson, who were

standing in line. The men were whispering to each other, and Johnson appeared to be surveying the bank lobby. Trooper Aye approached another bank employee who also appeared to be eyeing the men. He surreptitiously identified himself as a state trooper and asked the employee if everything was alright. She responded "no," and also appeared nervous.

Although not in uniform, Trooper Aye could still be recognized as a law enforcement officer. He was carrying several pieces of police equipment including a sidearm, taser, and two-way radio and he was wearing a bulletproof vest underneath his outer clothing. At some point, Johnson looked directly at Trooper Aye, said something to Nelson, and immediately walked out of the bank. Deputy Meeks observed Johnson exit the bank and stand at the driver's side of the sedan. Johnson appeared to gesture to Brookins before getting into the back seat. Trooper Aye and Deputy Meeks communicated by cellular phone as to what each had just witnessed. Trooper Aye then left the bank and rejoined Deputy Meeks in the police vehicle. The officers decided to stop and question the men. They pulled behind the sedan and activated their emergency lights.

The officers approached the car and displayed their badges. They verbally identified themselves as law enforcement officers and asked for identification. Trooper Aye told Johnson and Brookins that the whole incident "might be a misunderstanding" and that they "just want[ed] to talk with [them]." The men cooperated with the officers' request that they step out of the car. Deputy Meeks patted down Brookins and discovered a loaded .25 caliber handgun in his front pocket and a spare magazine in his back pocket. Deputy Meeks informed Trooper Aye, who was talking to Johnson, that he had found a gun. The officers then conducted a patdown search of Johnson and located another semi-automatic pistol in his coat pocket. The officers handcuffed Johnson and Brookins and seated them on the curb. Nelson then emerged from the bank and walked toward the sedan with his hands in his pockets.

Having already discovered that his associates were armed, the officers drew their own weapons and demanded that Nelson place his hands in plain view. After conducting a patdown frisk, which uncovered no additional firearms, the officers secured Nelson.

The officers explained to the three suspects that the matter still could be a misunderstanding, but they needed to run their identifications to determine whether they had any active warrants or other criminal history. At that point, Johnson volunteered that he had a previous drug conviction in Florida.[1] Deputy Meeks and Trooper Aye contacted the Anchorage Police Department ("APD"), whose officers responded and took over the investigation.

On April 19, 2007, Johnson was indicted in the District of Alaska on a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(1). He was arrested soon thereafter in Miami, Florida, and transported to Anchorage where he was arraigned. Johnson initially pled not guilty. He filed a motion to suppress all evidence obtained as a result of the detention, including the pistol officers had found in his coat pocket. Johnson also notified the prosecution that he intended to plead guilty if his suppression motion was unsuccessful.

On October 1, 2007, a magistrate judge held an evidentiary hearing on the motion, at which both Deputy Meeks and Trooper Aye testified. After evaluating the evidence and witness testimony, the magistrate recommended denial of Johnson's suppression motion, concluding that officers had reasonable suspicion that criminal activity might be afoot to detain Johnson for questioning and to conduct a patdown

---

[1] In August 2006, Johnson was convicted in Broward County, Florida, of delivery of cocaine, a second degree felony. The record before us is unclear, however, whether Johnson disclosed to the officers that the prior conviction was a felony conviction.

search. On November 19, 2007, the district court, over Johnson's objections, adopted the magistrate's recommendation in full and denied Johnson's motion to suppress. O n November 27, 2007, Johnson formally entered a conditional guilty plea, which reserved his right to appeal the denial of his suppression motion.

At sentencing, the government did not oppose a two-level reduction to Johnson's offense level for acceptance of responsibility under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 3E1.1(a), as recommended in the presentence investigation report. The government, however, declined to move for an additional one-level decrease under § 3E1.1(b), citing Johnson's decision to pursue the suppression issue on appeal. The district court, after considering the parties' arguments, rejected Johnson's argument that he should nonetheless be awarded the third-level adjustment because he timely pled guilty and thus permitted the government to avoid preparing for a trial. The court then sentenced Johnson to thirty months incarceration followed by three years of supervised release. This appeal followed.

## II

**[1]** Johnson first appeals the district court's denial of his suppression motion, which we review de novo. *See United States v. Bautista*, 362 F.3d 584, 588-89 (9th Cir. 2004). Whether there is reasonable suspicion to justify an investigatory stop is a mixed question of law and fact also reviewed de novo. *See United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992). We review factual findings for clear error. *See United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004). Contrary to Johnson's argument that the seizure of the firearm stemmed from a violation of his Fourth Amendment rights, we think the record amply supported a "stop and frisk" under *Terry v. Ohio*, 392 U.S. 1 (1968).

**[2]** "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention

short of traditional arrest." *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir. 2003) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). Police may detain or seize an individual for brief, investigatory purposes, provided the officers making the stop have reasonable suspicion "that criminal activity may be afoot." *United States v. Orman*, 486 F.3d 1170, 1173 (9th Cir. 2007) (quoting *Terry*, 392 U.S. at 30). If an officer reasonably suspects the individual may be armed and dangerous, the officer may "frisk" the person he has stopped to determine if the individual is carrying any weapons. *United States v. Washington*, 387 F.3d 1060, 1067 (9th Cir. 2004) (citing *Terry*, 392 U.S. at 30). This frisk is limited to a patdown of the exterior clothing. *Id.*

"Reasonable suspicion 'is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.' " *United States v. Thompson*, 282 F.3d 673, 678 (9th Cir. 2002) (quoting *United States v. Rojas-Millan*, 234 F.3d 464, 468-69 (9th Cir. 2001)). "To determine whether reasonable suspicion existed, the court must consider the totality of the circumstances surrounding the stop." *Hall*, 974 F.2d at 1204. This determination is made with reference to the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers." *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).

[3] We first dispose of Johnson's contention that his initial seizure amounted to an arrest and therefore required probable cause from the outset. He argues that he was under arrest from the moment officers activated their emergency lights, pulled their vehicle behind the parked sedan, and approached the car. Based on our review of the record, we disagree.[2] The record

---

[2]We conclude that the factual findings made by the district court are not clearly erroneous. The findings are well supported by the evidence presented at the suppression hearing, including the testimony of Trooper Aye and Deputy Meeks, which the district court obviously found credible.

reveals that Trooper Aye and Deputy Meeks identified themselves and simply asked to talk to Johnson and Brookins, who fully cooperated with the officers' request that they exit their vehicle and submit to a frisk.

[4] After finding weapons, the officers were justified in handcuffing Johnson and Brookins as they waited for the third suspect to emerge from the bank. *See United States v. Bravo*, 295 F.3d 1002, 1010-11 (9th Cir. 2002) (noting that, although handcuffing is a substantial factor in the determination, the totality of the circumstances remains the test for deciding whether a suspect was arrested or merely detained). Even after all three men were secured with handcuffs while the officers ran a background check, the officers repeatedly reassured the suspects that the detention might be nothing more than a misunderstanding and that its purpose was merely investigatory. Taken together, the circumstances of Johnson's detention would lead a reasonable person to believe that he was free to leave once the officers conducted a brief inquiry and allayed their suspicions. *See id.* at 1011. The district court did not err in finding that Johnson was not under arrest, but rather merely detained, during the material time period.[3]

[5] The investigatory stop and frisk was supported by reasonable suspicion on facts quite similar to those in *Terry* itself, where an alert detective suspected three men of casing a business for a possible robbery. The specific, articulable

---

[3]The government does not dispute that Johnson's detention ultimately escalated into an arrest. *See United States v. Robertson*, 833 F.2d 777, 780 (9th Cir. 1987) ("We often confront the issue of when a legitimate 'Terry stop,' for which only reasonable suspicion of criminal activity is required, escalates into an arrest for which probable cause is required. The differing standards for each reflect the differing degrees of intrusion characteristic to each."). But, it is readily apparent that Johnson's arrest did not occur until well after the officers had conducted the patdown search and discovered the firearm in his coat pocket, and even after Johnson volunteered that he had a prior conviction. Therefore, the precise moment of arrest is not material to the suppression issue before us.

facts known to Deputy Meeks and Trooper Aye were more than sufficient to support their suspicion that Johnson and his associates were casing a bank for a potential robbery and not merely experiencing car trouble. When two of the individuals entered the bank, one flipped up the hood on his hooded sweatshirt, which could aid in concealing his identity. The third man remained outside, lowered the hood of the car, and sat in the driver's seat. The two men inside the bank were seen whispering to one another while one appeared to surveil the lobby area. A visibly nervous bank employee told Trooper Aye that something was amiss in the bank. When one of the suspects became aware of Trooper Aye's presence, he whispered something to his associate, left the bank, and returned to the sedan waiting outside. A trained law enforcement officer could reasonably suspect that these individuals might well be intending to rob the bank and flee in the waiting getaway car.

**[6]** Given the nature of the suspected criminal activity, the officers were also justified in patting down Johnson. As Deputy Meeks testified, in his experience, "[a]lmost everybody has weapons" in Alaska. But here the officers suspected that a bank robbery was about to take place, which increased their suspicion that the men might be armed. Moreover, the suspects outnumbered the officers by three to two. Trooper Aye and Deputy Meeks were therefore justified, for their own safety, in conducting a patdown frisk of Brookins and Johnson to check for weapons. This is especially true in Johnson's case. After Deputy Meeks first discovered a loaded pistol and an extra ammunition clip in Brookins's possession, the officers had an even greater basis to suspect that Johnson might likewise be armed and that another patdown frisk was warranted for officer safety.

**[7]** We are unmoved by Johnson's efforts to provide innocent explanations for the conduct both outside and inside the bank. Whether this incident was indeed a foiled bank robbery attempt or a simple misunderstanding is not material to his

suppression motion or this appeal. Applying a "totality of the circumstances" review of the facts then known to them, the officers possessed substantial information supporting a reasonable suspicion that criminal activity was afoot and that weapons might be involved. The investigatory stop and frisk of Johnson and the discovery of his semi-automatic handgun did not violate his Fourth Amendment rights. The district court properly denied his motion to suppress the evidence.

## III

[8] Under the Guidelines, a defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to a two-level decrease in offense level. U.S.S.G. § 3E1.1(a); *see United States v. Espinoza-Cano*, 456 F.3d 1126, 1133-34 (9th Cir. 2006). Johnson received this reduction at sentencing. He challenges the district court's refusal to grant him an additional one-level downward adjustment under § 3E1.1(b) after the government declined to move for the extra reduction.[4] A district court's decision whether to reduce a defendant's sentence for acceptance of responsibility is reviewed for clear error. *Espinoza-Cano*, 456 F.3d at 1130. A district court's interpretation and application of the Guidelines are reviewed de novo. *United States v. Becker*, 919 F.2d 568, 570 (9th Cir. 1990).

[9] The Guidelines provide for, but do not mandate, an additional one-level reduction upon a motion by the government. Subsection (b) of § 3E1.1 states:

    If the defendant qualifies for a decrease under sub-

---

[4]Although merely advisory after *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts must consult the Guidelines as a "starting point" for the sentencing determination and the advisory "range must be calculated correctly." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc), *cert. denied sub nom. Zavala v. United States*, 128 S. Ct. 2491 (2008).

section (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(b). As we have said, "the government's discretion to file a motion under section 3E1.1(b) is 'a power, not a duty.' " *Espinoza-Cano*, 456 F.3d at 1135 (quoting *United States v. Moreno-Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005)). "[T]he government has been vested with broad discretion to determine when the § 3E1.1(b) adjustment is appropriate." *United States v. Medina-Beltran*, 542 F.3d 729, 731 (9th Cir. 2008) (per curiam) (internal brackets omitted).

   **[10]** This discretion, however, is not limitless. Like many of our sister circuits, we have held that "a prosecutor is afforded the same discretion to file an acceptance of responsibility motion for a third-level reduction under section 3E1.1(b) as that afforded for the filing of a substantial assistance motion under section 5K1.1." *Espinoza-Cano*, 456 F.3d at 1136. A district court may review the government's refusal to file a § 3E1.1(b) motion and grant the additional one-level reduction *sua sponte* if it finds that the decision was (1) animated by an unconstitutional motive (e.g., racial discrimination), or (2) arbitrary—i.e., not rationally related to a legitimate governmental interest. *Id.*; *see also Moreno-Trevino*, 432 F.3d at 1185-86. The burden of showing unconstitutional motive or arbitrariness rests on the defendant. *Espinoza-Cano*, 456 F.3d at 1136.[5]

---

[5]The panel unanimously reaches the same result, and all judges agree that the government here presented a legitimate reason for declining to

**[11]** The government did not file a § 3E1.1(b) motion for the third-level reduction, citing Johnson's stated intention to appeal the suppression order. Accordingly, the issue before us is whether the allocation and expenditure of prosecutorial resources for the purposes of defending an appeal is a rational basis for declining to move for the third reduction point. We hold that it is. When § 3E1.1(b) speaks of conserving govern-

move for the discretionary § 3E1.1(b) point reduction. However, Judge Smith, in his concurring opinion, advocates for a distinct two-part inquiry that no circuit, including ours, has ever employed or even suggested. There is good reason for this universal conclusion. Most significantly, it defies the plain text of the Guidelines provision, which conditions the sentencing court's authority to decrease by one additional level for acceptance of responsibility "upon motion of the government." U.S.S.G. § 3E1.1(b). Thus, when a defendant such as Johnson challenges the government's refusal to file such a motion, the only inquiry that courts engage in is whether that refusal was improperly motivated. *See United States v. Beatty*, 538 F.3d 8, 14 (1st Cir. 2008) (joining "[e]very other circuit that has considered th[e] revised provision" and holding that a defendant who challenges the prosecutor's refusal to file a § 3E1.1(b) motion must show that the refusal "was based on an unconstitutional motive or was not rationally related to any legitimate Government end" (internal quotations omitted)).

Further, separating the legal question into separate parts makes little sense from a practical standpoint. For instance, if Johnson did not plead guilty in a manner described in § 3E1.1(b), that would serve as a legitimate, non-arbitrary reason for the government to withhold the motion. Under our colleague's interpretation, Johnson would not be "eligible" for the discretionary reduction in the first instance (and presumably the government need not present an explanation at all). The result is the same. Rather than ruminate further on what arguably amounts to semantics, we merely note that the purpose of the 2003 amendments to § 3E1.1(b), discussed *infra*, was to assign control of the availability of the additional reduction point to the prosecution. In the Commission's view, the government is in the best position to evaluate whether the defendant has acted in a way that clearly demonstrates acceptance of responsibility for his offense, and whether he did so in a fashion that saved the government and the court resources in the particular case. Despite innumerable opportunities, no circuit court has sought to bifurcate the analysis in the manner our colleague does. We see no reason to depart from the wisdom of our predecessors.

ment resources in the "prosecution" of the defendant's "misconduct," it means more than simply trial preparation. "Prosecution" is commonly understood to encompass the entirety of the criminal proceedings in a particular case until judgment is final and certain. The government has an interest in securing outright guilty pleas. A conditional plea does not provide finality to the matter, and the government must then allocate precious resources to the appeal. Time and personnel are not unlimited. Resources devoted to appeals are resources lost to prosecuting other cases.

In *United States v. Espinoza-Cano*, our circuit's seminal case relating to the government's discretion under § 3E1.1(b), the defendant contended that he was entitled to the extra acceptance of responsibility reduction, despite the absence of a motion by the government, because he had stipulated to all the facts necessary to establish his guilt, thereby assisting in a manner that allowed the government to avoid preparing for trial. 456 F.3d at 1134. After establishing the proper standard applicable when the district court may act without a government motion, we rejected the defendant's argument because the stipulated bench trial—which the district court dubbed a "semi-modified Rule 11 colloquy" or "slow plea," *id.* at 1129 —still required the expenditure of resources. *Id.* at 1138. We explored the legitimate reasons that justified the government's decision to withhold a § 3E1.1(b) motion:

> Even if we were to equate a stipulated bench trial with an outright guilty plea, the government still would not have been compelled to file the motion. There are rational reasons for the government to prefer an outright guilty plea to a stipulated bench trial. In particular, as the government urges, a plea of guilty allows the government to avoid expending resources "anticipating, and ultimately defending, a complete appeal." As noted in *Wade*, "[t]he Government's decision not to move may[be] based . . . sim-

ply on its rational assessment of the cost and benefit that would flow from moving."

*Id.* (quoting *Wade v. United States*, 504 U.S. 181, 187 (1992)) (citation omitted).

While the particular facts of *Espinoza-Cano* are admittedly distinguishable from the conditional guilty plea in the instant case, the broad scope of the government's discretion was established. Indeed, we applied *Espinoza-Cano* and reached the same conclusion in *United States v. Medina-Beltran* a case strikingly similar to ours. The defendant, having pled guilty to illegal reentry following deportation, appealed the district court's refusal to grant him the third reduction point under § 3E1.1(b). *Medina-Beltran*, 542 F.3d at 731. We rejected his argument that the government had acted arbitrarily by declining to file the required motion, stating:

> Although Medina-Beltran pled guilty and avoided a trial on the substantive offense, he objected to his sentencing enhancement and rejected the government's proposed appeal waiver. The government anticipated and defended his appeal of his sentence. Under these circumstances, the government's decision not to move for the additional level reduction was not arbitrary.

*Id.*[6]

---

[6]The concurrence curiously denounces both *Espinoza-Cano* and *Medina-Beltran* as "largely inapposite." We respectfully but strongly disagree with our colleague's reasoning. The concurrence, for example, insists that "we can only speculate" about the circumstances of *Medina-Beltran*, where we upheld the government's decision not to move for a § 3E1.1(b) reduction because the government was forced to "anticipate[ ] and defend[ ] [Medina-Beltran's] appeal." 542 F.3d at 731. We hope our colleague is not suggesting that we can minimize as not pertinent any opinion authored by other panels based on bald speculation that the panels might have forgotten to mention or purposefully omitted facts or circum-

**[12]** Likewise, we conclude that the government here has presented an adequate reason for declining to file the discretionary motion—a reason that cannot fairly be characterized as arbitrary or based on an unconstitutional motive. Johnson's guilty plea was conditional, and he made clear that he intended to continue to pursue a favorable suppression order on appeal. If successful, the basis for the federal charge would dissolve. As the government maintains, Johnson "has not 'accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner.' " *United States v. Newson*, 515 F.3d 374, 377 (5th Cir. 2008) (quoting U.S.S.G. § 3E1.1 cmt. background).[7] Avoiding the expenditure of additional resources in anticipation of and defending against an appeal is a legitimate governmental interest. *See Medina-Beltran*, 542 F.3d at 731; *Espinoza-Cano*, 456 F.3d at 1138. Quite clearly, the government's proffered reason here is rationally related to this end. Because the government's decision not to file a § 3E1.1(b) motion was neither arbitrary nor based on an unconstitutional ground, the district court appropriately refused to grant Johnson the additional one-level reduction *sua sponte*.

We once again find support for our holding in our sister circuits, which have confronted similar challenges to the government's broad discretion under § 3E1.1(b). *See, e.g., Espinoza-*

stances material to their holding. Once we entertain this type of judicial analysis, virtually any opinion becomes as readily distinguishable as the limits of the human imagination. Such a dismissive view of case law is unwise. We addressed the proper analysis of the current version of § 3E1.1(b) in *Espinoza-Cano* and applied it in *Medina-Beltran.* We take the holdings in both of those cases for what they state and faithfully follow them here.

[7]We merely note the nature of Johnson's appeal because it is relevant to his degree of acceptance of responsibility, which is the essence of § 3E1.1. We do not imply that Johnson might have had a more compelling argument had he only sought to preserve his right to appeal issues pertaining to the sentencing determination.

*Cano*, 456 F.3d at 1135-36 (relying heavily on out-of-circuit authority). *In United States v. Blanco*, 466 F.3d 916 (10th Cir. 2006), for example, the Tenth Circuit approved the refusal to move for the additional reduction because, on the defendant's motion, the government was forced to expend resources reweighing drug evidence at an independent testing facility. *Id.* at 918-19. The court held that this decision was neither unconstitutional nor arbitrary because "[e]nsuring efficient resource allocation is a legitimate government end and a stated purpose of § 3E1.1(b)." *Id.* at 918; *see also Moreno-Trevino*, 432 F.3d at 1186-87 (finding appropriate the government's refusal to file a § 3E1.1(b) motion where the defendant, having timely pled guilty to illegal reentry after deportation, indicated that he intended to again reenter the country after his incarceration and removal, in violation of the terms of his plea agreement and supervised release); *United States v. Sainz-Preciado*, 566 F.3d 708, 715-16 (7th Cir. 2009) ("So while Sainz-Preciado's early guilty plea spared the expense of a trial, the government still had to prepare . . . testimony and other evidence to prove the full scope of Sainz-Preciado's criminal conduct at the sentencing hearing. This added burden to both the government and the court system gave the government good reason (if it needed one) not to file a § 3E1.1(b) motion.").

The Fifth Circuit has similarly addressed the issue before us, rejecting virtually identical arguments by the defendant. In *United States v. Newson*, the case upon which we relied in *Medina-Beltran*, the defendant timely pled guilty to a drug possession charge. 515 F.3d at 375. The government declined to move for the discretionary one-level adjustment under § 3E1.1(b) "solely because [the defendant] would not accept the appellate waiver provision in its proposed plea agreement." *Id.* at 377. The defendant appealed his sentence, arguing that the government's refusal was "irrational and punitive and not based on a legitimate governmental purpose" because the purpose of § 3E1.1(b) was strictly "to prevent a waste of prosecutorial and judicial resources at the trial-court level."

*Id.* The government countered that § 3E1.1(b) "encompass[es] not only the expenditure of the Government's time and effort at the prejudgment stage but also in appellate or collateral-review proceedings," and that "conserving [governmental] resources in post-judgment proceedings serves a legitimate governmental interest." *Id*. Applying the same standard that we apply, the Fifth Circuit sided with the government. Relying on our decision in *Espinoza-Cano*, the court concluded that "[t]he defendant's refusal to waive his right to appeal is a proper basis for the Government to decline to make such a motion, as it is rationally related to the purpose of the rule and is not based on an unconstitutional motive." *Id.* at 378. We think the reasoning of the Fifth Circuit is sound.[8]

Johnson's argument on appeal focuses almost exclusively on the timeliness of the plea—and, not the nature of his conditional guilty plea or the governmental interests at stake. This

---

[8]The concurrence cites other non-circuit cases such as *United States v. Anzalone*, 161 F.3d 1125 (8th Cir. 1998), and *United States v. Wilson*, 390 F.3d 1003 (7th Cir. 2004), to suggest that there is a competing view of what constitutes arbitrariness. But *Anzalone* and *Wilson*, cases involving the government's refusal to file a § 5K1.1 substantial assistance motion, are not inconsistent with our holding today. Determining whether a defendant has materially assisted the prosecution of others and whether a defendant has accepted responsibility in a sufficient manner are far different inquiries. As we stated, ensuring efficient allocation of government resources is plainly a legitimate government interest contemplated by § 3E1.1(b). Indeed, to a large extent, our colleague is creating disagreement where, on careful reading, there is none.

We further reject the concurrence's "parade of horribles" as entirely irrelevant to Johnson's case. This line of reasoning, which presents scenarios that bear no resemblance to the facts presented, is merely a strawman. In reviewing the government's refusal to file a § 3E1.1(b) motion, we have described the analysis to be whether the decision was "rationally related to any legitimate governmental purpose." *Espinoza-Cano*, 456 F.3d at 1136. If it happens that prosecutors abuse their broad, but not limitless, discretion under § 3E1.1(b) (or § 5K1.1), we can pass judgment on those factual scenarios as they appear in the next case. We decide the appeal now before us—not all hypothetical reasons the government could give for refusing to file the requisite motion.

position misses the mark, as it "ignores the principle that a defendant's fulfillment of the conditions for a motion for an adjusted offense level is necessary, but does not mandate relief." *Espinoza-Cano*, 456 F.3d at 1136; *see also Wade*, 504 U.S. at 187 ("[A]lthough a showing of assistance is a necessary condition for relief [under § 5K1.1], it is not a sufficient one. The Government's decision not to move may have been based not on a failure to acknowledge or appreciate Wade's help, but simply on its rational assessment of the cost and benefit that would flow from moving."). In support, Johnson heavily relies on *United States v. Vance*, 62 F.3d 1152 (9th Cir. 1995), and other decisions by our court and other circuits that considered a prior version of § 3E1.1 that materially differs from the current version applicable in this case.

**[13]** Before April 2003, the decision to award the third-level reduction for acceptance of responsibility was non-discretionary and lay in the hands of the district court—a "factual determination reviewed for clear error." *United States v. Blanco-Gallegos*, 188 F.3d 1072, 1076 (9th Cir. 1999). Section 3E1.1(b) formerly read:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
>
> > (1) timely providing complete information to the government concerning his own involvement in the offense; or
> >
> > (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(b) (2002). Thus, when we decided *Vance*, a defendant was entitled to "a third level reduction either for providing information to the government regarding his own involvement or by timely notifying the government of his intent to plead guilty." *Espinoza-Cano*, 456 F.3d at 1134. The "key inquiry" under the old version of § 3E1.1(b) was simply "whether the confession was complete and timely." *Blanco-Gallegos*, 188 F.3d at 1077.

[14] The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(g), 117 Stat. 650, 671-72 (2003), materially altered § 3E1.1(b).[9] Notably, it made "the third level reduction subject to the discretion of the government, rather than mandatory, upon a timely plea of guilty." *Espinoza-Cano*, 456 F.3d at 1137. Further, the PROTECT Act expressly inserted consideration of the government's

---

[9]Our colleague contends that "*Vance* interpreted language substantially identical to that at issue here." But, by all accounts, the 2003 PROTECT Act marked a major change in the analysis of a defendant's entitlement to the third-level § 3E1.1(b) decrease. *See, e.g.*, *Sainz-Preciado*, 566 F.3d at 715 ("We, along with every other circuit to consider the issue, have held that the government motion is a necessary prerequisite to a § 3E1.1(b) reduction. That rule reflects a 2003 congressional amendment to § 3E1.1(b) that added the 'upon motion of the government' language, indicating Congress's intent to leave third-point reductions to the government's discretion." (internal citation omitted)); *Beatty*, 538 F.3d at 15 ("If the government were *required* to move for the third-level reduction when the defendant enters a timely plea, thereby saving the government the expense of trial preparation, the amended language requiring that the government file a motion would be a nullity. Such a holding would effectively reinstate the pre-2003 version of § 3E1.1 by rendering entitlement to the motion automatic if the defendant received the reduction under § 3E1.1(a) and entered a 'timely' plea."). The concurrence, somewhat inexplicably, dismisses as inapposite the two decisions on point from our circuit, which follow our sister circuits' view of § 3E1.1(b), in favor of pre-2003 case law interpreting a materially different version of the Guidelines provision. The law has changed.

resources into the calculus. Under the post-PROTECT Act version of § 3E1.1(b), the government must file a motion stating that the defendant's timely notification of an intent to plead guilty not only "permitt[ed] the government to avoid preparing for trial," but also "permitt[ed] *the government* and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b) (2006) (emphasis added). Both of these changes are significant. As a result, *Vance* does not govern here.[10] Simply put, Johnson, by relying exclusively on pre-PROTECT Act authorities, fails to account for the government's broad discretion whether to file a § 3E1.1(b) motion, which we have confirmed in *Espinoza-Cano* and *Medina-Beltran*.[11]

[15] We acknowledge that the government's broad discretion to move for the third-level reduction under § 3E1.1(b) might in some cases place defendants in a dilemma. *See Blanco*, 466 F.3d at 919 ("[The defendant] enjoyed the right to insist on reweighing the drugs, and he could exercise that right in one of two ways: by reweighing the drugs or by waiving that right in exchange for a lower sentence."); *see generally United States v. Ensminger*, 567 F.3d 587, 593 (9th Cir. 2009) (noting the defendant's informed choice to forgo avail-

---

[10]In *Vance*, we held that the defendant's filing of a suppression motion could not serve as a bar to receiving the third reduction point where the defendant timely notified the prosecution of his intent to plead guilty. 62 F.3d at 1157. Given that the issue here relates to the expenditure of governmental resources on appeal, Vance is inapposite for this reason as well. While *Vance* remains authoritative in other respects, it certainly does not demonstrate, as Johnson argues, that the government acted arbitrarily in refusing to file a § 3E1.1(b) motion in the instant case.

[11]Johnson also argues that the government's refusal was arbitrary because it has not taken the same position in other criminal cases involving conditional pleas within the District of Alaska. This argument lacks merit. To not be "arbitrary," the government need only demonstrate that its decision was rationally related to a legitimate end. *Espinoza-Cano*, 456 F.3d at 1136. One of the purposes of the PROTECT Act amendments was to allow the government to determine when the third-level reduction is appropriate on a case-by-case basis.

able defense strategies by entering a guilty plea). But, Johnson has no legal entitlement to the discretionary one-level reduction for acceptance of responsibility. As we have stated time and again, "there is nothing improper about the government providing an incentive to plea bargain." *Espinoza-Cano*, 456 F.3d at 1138; *see also United States v. Baldrich*, 471 F.3d 1110, 1115 (9th Cir. 2006) (rejecting challenge that "section 3E1.1(b) is unconstitutional because it penalizes defendants for exercising their constitutional right to go to trial").[12] Johnson elected to bring his suppression argument to us, delaying finality of this criminal prosecution and causing the government to allocate and expend substantial additional resources to defend this appeal. The district court correctly concluded that the government acted within its discretion when it refused to file a § 3E1.1(b) motion.

## IV

The officers had reasonable suspicion to conduct an investigatory stop and frisk of Johnson, and, as a result, the district court did not err in denying his motion to suppress. The district court also properly declined Johnson's request for the discretionary one-level adjustment for acceptance of responsibility under § 3E1.1(b).

**AFFIRMED.**

---

[12]We further point out that "it is well settled that there is no constitutional right to an appeal." *Abney v. United States*, 431 U.S. 651, 656 (1977); *accord United States v. Sudthisa-Ard*, 17 F.3d 1205, 1206 (9th Cir. 1994). "[T]he right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940).

MILAN D. SMITH, JR., Circuit Judge, dissenting in part, but concurring in the judgment:

I agree that the district court correctly denied Johnson's suppression motion, and ultimately, that the district court did not abuse its discretion in declining to award Johnson a third-level adjustment for acceptance of responsibility. However, I write separately because I believe that my colleagues in the majority—by misreading the language of § 3E1.1(b), by misjudging the continuing validity of our controlling precedent in *United States v. Vance*, 62 F.3d 1152 (9th Cir. 1995), and by relying too heavily on largely inapposite case law— unreasonably expand the scope of the government's discretion under United States Sentencing Guidelines § 3E1.1(b). In so doing, the majority risks giving federal prosecutors undue license to penalize defendants for forcing the government to expend resources, even if the government's justification for doing so is entirely unrelated to the stated objectives of the Sentencing Guidelines.

I believe that the majority unnecessarily conflates what, in my view, should be two distinct inquiries: (1) the substantive prerequisites for a third-level adjustment under § 3E1.1(b); and (2) the scope of government discretion under § 3E1.1(b). Specifically, I would first determine the meaning of § 3E1.1(b) and whether the defendant became eligible for the adjustment by fulfilling the substantive requirements of § 3E1.1(b). Then, I would gauge whether the government's denial of the adjustment was rationally related to the identified legitimate government interest.[1] We cannot effectively

---

[1]I note that at the heart of this case is the inherent difficulty of applying rational basis review to government motions for sentencing range adjustments under the Guidelines. In other fields employing rational basis review, specifically due process and equal protection law, a court judges the legitimacy of the government's conduct by that court's own notion of what constitutes a legitimate governmental objective. *See Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528 (1959) (holding that regulation

determine whether the government's basis for denying the adjustment serves a legitimate government interest unless we first know what that legitimate government interest is.[2]

Using the approach described above, I conclude—contrary to the majority's effective holding—that the government's discretion over its basis for denying an adjustment under § 3E1.1(b), while broad, must nonetheless be closely tied to the plain language of the guideline.

## I.   The Meaning of Sentencing Guideline § 3E1.1(b)

### A.   The Guideline's Language

We first consider the language of § 3E1.1(b) and whether Johnson fulfilled his obligations under that section to become eligible for the adjustment. As the majority notes, § 3E1.1(b) states in relevant part that the government's motion should be based on its assertion that the defendant

---

will withstand minimal scrutiny "if any state of facts reasonably can be conceived that would sustain it"); *Madden v. Kentucky*, 309 U.S. 83, 88 (1940) (noting that Fourteenth Amendment plaintiff must "negative every conceivable basis" for the law under traditional rational-basis review); Andrew Koppelman, Romer v. Evans *and Invidious Intent*, 6 WM. & MARY BILL RTS. J. 89, 114-15 (1998). In sentencing cases like this one, however, the pertinent guideline expressly articulates the government interest at issue. As a result, it is initially unclear in this instance whether government action passes muster only if it is related to the government objective stated in the guidelines, or whether it fails only if it has no "conceivable basis," i.e., it is permissible so long as it relates to *any* legitimate government objective—even if that objective is completely untethered from the guideline's stated objective. I further address this issue in Part II below and conclude that the former is the proper standard.

[2]The majority criticizes this approach, implying that we must undertake the § 3E1.1(b) analysis by determining the arbitrariness of the government's application of the guideline without determining what that guideline means. To me, this is illogical.

assisted authorities in the investigation or prosecu-
tion of his own misconduct by timely notifying
authorities of his intention to enter a plea of guilty,
*thereby* permitting the government to avoid prepar-
ing for trial *and* permitting the government and the
court to allocate their resources efficiently.

(Emphases added.) While the trial preparation phrase and the
resource allocation phrase are stated in the conjunctive, the
term "thereby" applies to both phrases.[3]

The word "thereby" is defined as "by *that* means."[4] Here,
"that" means "timely notifying authorities of . . . intention to
enter a plea of guilty." Thus, the section contemplates that the
means by which the defendant both saves trial preparation and
permits efficient resource allocation, is through a timely
guilty plea. Stated differently, to be eligible for the adjust-
ment, the defendant must have "assisted authorities in the
investigation or prosecution of his own misconduct" by:

- "permitting the government to avoid preparing
  for trial" *by the means of* "timely notifying
  authorities of his intention to enter a plea of
  guilty" *and*

- "permitting the government and the court to allo-
  cate their resources efficiently" *by the means of*
  "timely notifying authorities of his intention to
  enter a plea of guilty."

In this case, Johnson did both, which is why he was eligible

---

[3]The resource allocation phrase cannot be read as a conjunction with the
timely notification phrase because, were the former intended as such, one
would expect the word "by" to proceed "permitting the government and
the court," as it does with "timely notifying."

[4]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2372 (2002)
(emphasis added).

for the third-level adjustment: the government conceded in its sentencing memorandum that Johnson had "entered a plea of guilty in a timely manner, admitted possession of a firearm as a felon, and saved the government the burden and expense of trial." In addition, the district court stated on the record: "I don't think there's any dispute in the record [that Johnson's plea was timely and that the government expended no resources in preparing for trial]."

Though the majority does not fully explain its reasoning, its analysis implies that § 3E1.1(b) should be read so as to render a defendant ineligible for the adjustment where he *either* goes to trial *or* causes the government to expend resources.[5] That interpretation misreads the guideline's plain language. In my view, the result of the majority's approach overlooks the effect of the *notice of intent to plead guilty* prong of the guideline and the term "thereby."

Moreover, such a reading could produce absurd results; it could allow the government to cite any defendant-caused government resource expenditure whatsoever, no matter how unrelated to the guilty plea. My concerns are not merely hypothetical; in previous instances, the government or court has based denials of an adjustment under various Guidelines on, for example: the defendant's having filed a civil lawsuit against the government, *United States v. Wilson*, 390 F.3d 1003, 1008, 1010-11 (7th Cir. 2004) (government declining to file motion for adjustment under Federal Rule of Criminal Procedure Rule 35(b) or Sentencing Guidelines § 5K1.1 for substantial assistance); the defendant's having requesting a suppression hearing, *Vance*, 62 F.3d at 1157; and the defendant's suspected continuing drug use, *United States v. Anza-*

---

[5]The majority does suggest that the term "prosecution," U.S.S.G. § 3E1.1(b), encompasses "the entirety of the criminal proceedings in a particular case until judgment is final and certain." Maj. Op. at 13053. This reading, however, is foreclosed by *Vance*, 62 F.3d at 1157. *See* Part I.B. below.

*lone*, 148 F.3d 940, 941 (8th Cir. 1998) (also under § 5K1.1), *vacated & reh'g en banc granted*, 148 F.3d 940, *reinstated & reh'g en banc denied*, 161 F.3d 1125 (8th Cir. 1998).[6]

## B.   Section 3E1.1(b) as Interpreted in This Circuit

This semantic exercise is unnecessary, however, because we previously interpreted § 3E1.1(b)'s substantive basis for the third-level adjustment in *Vance*, 62 F.3d at 1157. I believe that *Vance* still governs that substantive basis, and I disagree with the majority's conclusion that *Vance* has no applicability in this case. In *Vance*, we held that a defendant who promptly pled guilty after losing a suppression motion—but reserved the right to appeal the motion's denial—was nonetheless entitled to a full three-level § 3E1.1 adjustment for acceptance of responsibility. *Id.* The district court ruled that, among other things, the defendant's filing a suppression motion rendered him unsuitable for a § 3E1.1(b)(2)[7] reduction. In rejecting that view, we clarified that only *trial* preparation may be considered in determining suitability for the adjustment. *Id.* In so holding, we explicitly observed that "[t]he guidelines do not mean 'motions' where they say 'trial.' " *Id.* (citing *United States v. Kimple*, 27 F.3d 1409, 1414-15 (9th Cir. 1994); *see also United States v. Price*, 409 F.3d 436, 443-44 (D.C. Cir. 2005) (holding that, although the government was forced to spend resources on a suppression hearing, because "the Government [did] not dispute that it never had to prepare for *trial*[,] . . . under the plain language of U.S.S.G. § 3E1.1(b)(2) [(2001)], [the defendant] was entitled to a third-level reduc-

---

[6]The majority labels these examples a "parade of horribles" and dismisses them as irrelevant to this case. Maj. Op. at 13057 n.8. But they are quite relevant; they demonstrate the potential Guidelines flouting that occurs where courts, like the majority here, allow the government to ignore the plain language of the Guidelines in declining to move for sentencing adjustments.

[7]Section 3E1.1(b)(2) is part of the predecessor to the current Acceptance of Responsibility Guideline. As shown below, though it is formatted slightly differently, it is substantively similar for the purposes of this case.

tion in his offense level"). Thus, *Vance* clarified that only the defendant's *trial resource*-saving timely plea may be considered in determining the defendant's suitability for the third-level adjustment.

The majority insists that *Vance* is no longer applicable in light of the PROTECT Act, because that Act materially changed some of the language of § 3E1.1(b). I disagree. For purposes of this case, *Vance* interpreted language substantially identical to that at issue here. *See United States v. Espinoza-Cano*, 456 F.3d 1126, 1137 (9th Cir. 2006) (noting that, except for giving the government discretion over the motion, "the language of section 3E1.1(b) tracks the former [pre-PROTECT Act] language of section 3E1.1(b)(2)"). The PROTECT Act amended § 3E1.1(b) in the following way (with the double underscore indicating additions and the strikethrough indicating deletions):

> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by ~~taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; or (2)~~ timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate ~~its~~ their resources efficiently, decrease the offense level by 1 additional level.

Thus, the PROTECT Act amended § 3E1.1, but only by: (1) changing *who* initiates the adjustment and giving that decision deference; (2) removing the defendant's provision of information as a basis for receiving the adjustment; and (3)

adding the consideration of government resources in preparing for trial. *See id.* The substantive basis for the decision to award the adjustment for a timely guilty plea remains essentially the same: the defendant is eligible for the adjustment, provided he "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial" and thus "permitting [the government and] the court to allocate [their] resources efficiently." U.S.S.G. § 3E1.1(b) (bracketed portions denoting PROTECT Act changes). I am not persuaded that Congress—in amending the guideline, but leaving unchanged the "timely . . . plea of guilty" and "preparing for trial" language—intended the amended guideline to allow consideration of conduct unrelated to guilty pleas, such as appeals or motions to suppress (the latter, a basis specifically rejected in *Vance* and *Price* as a valid reason for denying the third-level adjustment). If Congress intended that interpretation, it could easily have included such language or removed the references to "timely . . . plea of guilty" and "preparing for trial."[8]

Accordingly, while the PROTECT Act undoubtedly abrogated *Vance*'s holding as to *who or what entity initiates the process* for the third-point adjustment and the deference afforded that decision, its holding as to *the substantive basis for the adjustment* remains good law and controls our analysis of this issue, i.e., whether Johnson was eligible for the adjustment in the first place. *See Espinoza-Cano*, 456 F.3d at 1137. By erroneously disregarding *Vance* altogether, the majority

---

[8]The majority suggests that this approach renders the changes created by the PROTECT Act "superfluous." Maj. Op. at 13054-55 n.9 (citing *United States v. Beatty*, 538 F.3d 8, 15 (1st Cir. 2008)). Not so; there is no dispute, for instance, that the government is now the sole arbiter of whether the defendant's guilty plea was sufficiently timely to prevent it from expending trial resources. Indeed, it is the majority's approach which effectively renders superfluous the "timely . . . plea of guilty" and "preparing for trial" portion of the post-PROTECT Act § 3E1.1(b), by permitting an adjustment withholding based on a reason unrelated to the guideline's stated purpose.

leaves us with nothing against which to measure the arbitrariness of the government's action.

As stated, *Vance*'s holding on this issue is clear: the only "resources" that may be considered in gauging the defendant's satisfaction of the guideline are those resources devoted to trial preparation. 62 F.2d at 1157 ("[A] plea sufficiently in advance of trial so that the government can avoid trial preparation and the court can allocate its resources efficiently is sufficiently timely for all three points."); *id.* ("The guidelines do not mean 'motions' where they say 'trial' at § 3E1.1(b)(2)." (citing *Kimple*, 27 F.3d at 1414-15)). It is clear, therefore, that Johnson was eligible for the adjustment.

## II. Arbitrariness

For the reasons noted, Johnson's plea satisfied the pertinent plain terms of § 3E1.1(b), and he was therefore eligible for a third-level adjustment. Under the pre-2003 Sentencing Guidelines scheme, this determination would have ended our inquiry, and Johnson would have been entitled to the downward adjustment. *Cf. United States v. Blanco-Gallegos*, 188 F.3d 1072, 1077 (9th Cir. 1999). However, as noted, the PROTECT Act added an additional predicate to a defendant's benefitting from § 3E1.1(b) by amending the Sentencing Guidelines to give the government the "power," not the "duty," *United States v. Moreno-Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005) (quoting *Wade v. United States*, 504 U.S. 181, 185 (1992)), in the exercise of "broad discretion to determine when the [§ 3E1.1(b)] adjustment is appropriate." *Espinoza-Cano,* 456 F.3d at 1137-38. The government's decision must not be arbitrary, i.e., not rationally related to a legitimate government purpose, or based on a unconstitutional motive. *United States v. Newson*, 515 F.3d 374, 378 (5th Cir. 2008) (citing *Wade*, 504 U.S. at 186-87).

In this case, the government conceded, and the district court agreed, that Johnson had timely pled guilty and saved

the government the expense of trial preparation. Thus, the only remaining question is whether the government abused its discretion by denying Johnson the adjustment. On this issue, I agree with the majority that, post PROTECT Act, the government enjoys discretion in moving for the third-level adjustment under § 3E1.1(b). I disagree with the majority as to the scope of that discretion.

While we have not yet clearly resolved this issue, *cf. United States v. Medina-Beltran*, 542 F.3d 729 (9th Cir. 2008) (per curiam);[9] *Espinoza-Cano*, 456 F.3d 1126,[10] other circuits have

---

[9]In *Medina-Beltran*, the court determined that, "[u]nder these circumstances," the government's decision not to move for a § 3E1.1(b) reduction was not arbitrary. Id. at 731. In so concluding, however, the *Medina-Beltran* panel provided no analysis and cited only an out-of-circuit decision as authority. *Id.* (citing *Newson*, 515 F.3d at 378-79). Other than stating that the defendant objected to his sentencing enhancement and rejected the government's proposed appeal waiver, *id.* at 731, the case provides no factual background. Therefore, we do not know the nature of "th[ose] circumstances," *id.*, or whether Medina-Beltran's plea was "timely" as required by § 3E1.1(b). We can only speculate whether the government expended resources on trial preparation and whether—unlike here—the defendant failed to meet the relevant terms of § 3E1.1(b). Curiously, Medina-Beltran is structured more like a memorandum disposition than an opinion, and, consistent with that structure, it does not purport to state any rule of law. Though the majority accuses me of "bald speculation" as to the lack of pertinent facts in that case, Maj. Op. at 13054-55 n.6, I intend no offense to the authoring panel when I observe that it is critical for an opinion to provide the pertinent facts of the case; the reader should not be required to speculate, as the majority does here, about what those facts *might* include. For this reason—though *Medina-Beltran* is undoubtedly a published opinion and controlling in this circuit—its lack of factual background and cursory treatment of the § 3E1.1(b) issue prevent us from determining precisely *what* it controls. Accordingly, *Medina-Beltran* cannot be read to establish a per se rule of nonarbitrariness where the government declines to move for a § 3E1.1(b) adjustment because the defendant appeals his conviction. *Cf. United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring) ("Where it is clear that a statement is made casually and without analysis, . . . it may be appropriate to re-visit the issue in a later case[,]" provided that "the later panel is convinced that the earlier panel did not make a deliberate decision to adopt the rule of law it announced.").

[10]*Espinoza-Cano* is also largely inapposite. Unlike Johnson, Espinoza-

considered the post-PROTECT Act application of § 3E1.1(b) and the analogous application of § 5K1.1, i.e., treatment of the government's discretion in deciding whether to move for a downward adjustment for a defendant's substantial assistance.[11] The Fifth and Tenth Circuits have concluded, as articulated by the Tenth Circuit in *United States v. Blanco*, that "[e]nsuring efficient resource allocation is a legitimate government end and a stated purpose of § 3E1.1(b)," 466 F.3d 916, 918 (10th Cir. 2006), and held nonarbitrary a governmental refusal to move for a one-level reduction under § 3E1.1(b) when the United States is required to expend additional resources as a result of, for instance, a defendant's request to reweigh drug evidence or refusal to waive appeal. *Id.*; *Newson*, 515 F.3d at 378.

The majority finds support for its conclusion in the preceding cases, as well as in two largely inapposite[12] Ninth Circuit cases, *Medina-Beltran*, 542 F.3d 729, and *Espinoza-Cano*, 456 F.3d 1126. But the majority fails to mention that at least one other circuit takes a different approach. *See Anzalone*, 148 F.3d at 941. In *Anzalone*, the Eighth Circuit stated that, where the government bases its decision not to move for a downward adjustment on reasons unrelated to whether the

---

Cano did not "timely notify[ ] authorities of his intention to enter a plea of guilty," U.S.S.G. § 3E1.1(b); indeed, he never pled guilty at all. 456 F.3d at 1129. His conduct therefore did not meet the plain requirements of § 3E1.1(b), and, as a result, it cannot reasonably be suggested that the government abused its discretion in denying Espinoza-Cano a third-level adjustment. *Espinoza-Cano*'s holding in this regard, therefore, should have no bearing on this case.

[11]As the majority notes, the government's discretion under § 5K1.1 is the same as under § 3E1.1(b). *See Espinoza-Cano*, 456 F.3d at 1136 (holding that "a prosecutor is afforded the same discretion to file an acceptance of responsibility motion for a third level reduction under section 3E1.1(b) as that afforded for the filing of a substantial assistance motion under section 5K1.1").

[12]See notes 9 and 10.

defendant fulfilled the facial requirements of the sentencing guideline, its decision does *not* serve a legitimate government interest. *Id.* (holding that government's decision not to move for § 5K1.1 substantial assistance departure may not be based on " 'factors other than the substantial assistance provided by the defendant' " (quoting *United States v. Rounsavall*, 128 F.3d 665, 669 (8th Cir. 1997)) where government refused to file motion because it suspected that defendant, while providing assistance, had continued using illegal drugs). Thus, there is no consensus among the circuits over whether the government may cite a reason not based in the Guidelines' language in denying the relevant adjustment. *Cf. also Wilson*, 390 F.3d at 1010 11 (holding that government's refusal to file a Rule 35(b) or § 5K1.1 motion for substantial assistance was not rationally related to a legitimate government interest where it was based on defendant's having threatened a lawsuit against government which, the government argued, negated substantial assistance by creating an adversarial relationship); *id.* at 1010 (holding civil suit justification was "so far afield from the purpose of § 5K1.1 and Rule 35(b) as to be irrational").

While I am not entirely persuaded by the Eighth Circuit's approach, I am also uncomfortable with the majority's approach in this case. Though the majority purports to limit its holding to whether the government is required to expend resources on appeals, I believe that, by condoning the adjustment denial based on the "legitimate government end" of "efficient resource allocation," Maj. Op. at 13056 (citing *Blanco*, 466 F.3d at 918), the effect of the majority's holding is much broader. The holding significantly and unreasonably expands the meaning of arbitrariness and "legitimate government interest," thereby giving the government near carte blanche to deny a § 3E1.1(b) adjustment whenever the defendant's conduct causes the government to expend any resources. To allow the government to use § 3E1.1(b) to accomplish objectives unrelated to the Guidelines' plain language flouts both the Guidelines and Congress' intent. Such a result undermines Congressional sentencing objectives by vitiating the Guide-

lines' purpose of encouraging defendants to timely plead guilty and avoid trial: if the government can decline to move for a § 3E1.1(b) adjustment for reasons unrelated to § 3E1.1(b)'s stated purpose, future guilty defendants will have fewer incentives to timely plead guilty, since doing so would entail surrendering a key right with no reasonable expectation of a corresponding benefit.

Nonetheless, having considered the relevant authority and policy implications, I reluctantly conclude that, in this case, the government's denial of a third-level adjustment was not arbitrary. Although Johnson's plea permitted the government to husband its resources at the trial level, Johnson's unwillingness to waive his appeal rights showed that he had not "accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner," U.S.S.G. § 3E1.1 cmt. background. Importantly, though his conditional guilty plea was technically a notice of his "intention to enter a plea of guilty" under the letter of the Guidelines, it did not fulfill the spirit of § 3E1.1(b), as the conditional plea was arguably not a true "guilty" plea as contemplated by § 3E1.1(b). I may have concluded differently were I reviewing the issue under the pre-PROTECT Act regime. But under our current standard, I believe that the government's basis for its denial was sufficiently tethered to the Guidelines to render that basis rationally related to a legitimate government interest and non-arbitrary. As a result, I concur in the judgment.